## 64554. KEEN v. THE STATE.
## 64555. THOMPSON v. THE STATE.

POPE, Judge.

Richard C. Keen and Paul J. Thompson here appeal their convictions of trafficking in marijuana. The material facts are summarized below.

On June 1, 1980 the GBI was tipped by William C. Vickery about a drug smuggling operation in Ben Hill County. Vickery owned a large tract of land along the Ocmulgee River in that county, near Fitzgerald. An airstrip was located on his land which was used by the drug smugglers. Vickery informed the GBI that four men had landed at his airstrip in a small, single engine airplane. Two of them, one later identified as appellant Keen, were staying in a motel in Fitzgerald and the other two, one later identified as appellant Thompson, were staying at the airstrip. The men were reportedly there to coordinate the incoming shipment of a large quantity of drugs. Vickery's tip prompted state and federal agents and local law enforcement officers to conduct surveillance at the airstrip and in the general vicinity in an effort to determine when the drug shipment was to arrive.

On June 10 a twin engine airplane landed at the Vickery airstrip and a number of men in camouflage clothing were observed unloading bales of suspected marijuana from it. The agents converged on the scene in an attempt to make arrests, but were unable to prevent the airplane from taking off and the men escaping. The single engine airplane also took off, but only after an exchange of gunfire between the airplane's occupants and the agents.

The smugglers left behind on the airstrip 37 bales (over 1800 pounds) of marijuana (apparently having origin in Bogota, Columbia) and a 1980 Ford containing an air-to-ground radio, a police band radio scanner, some camouflage clothing and a key to a motel room in Fitzgerald. It was later discovered that appellant

Thompson had rented the car and appellant Keen had been staying in the motel room. Some four hours after the gun battle at the airstrip, Thompson was found on his front lawn in Stuart, Florida, wearing camouflage clothing and suffering from a gunshot wound. Stuart is approximately 2-1/2 hours by air from Fitzgerald.

Appellants were indicted in September, 1980. Of the other two indicted along with them, one died prior to trial and the other, William L. Brock, was severed from appellants because he was granted federal use immunity to testify against them. Appellants retained Phillip G. Butler, a Florida attorney, who appeared for them pro hac vice.

Appellants were tried together in October, 1981. Their principal defense strategy was that of individual and independent alibi. They were, however, found guilty by the jury. The trial court sentenced each of them to ten years and fined them each $25,000.00. After conducting two hearings, the court denied appellants' motions for new trial. Appellant Keen asserts five enumerations of error on this appeal and appellant Thompson asserts nine, five of which essentially duplicate Keen's.

1. The first contention raised by both appellants is that they were denied their constitutional right to effective assistance of counsel. They base their contention primarily on an alleged conflict of interest on the part of their trial attorney, Phillip Butler, in defending both of them at the joint trial. They further assert that their right to effective assistance of counsel was violated because the trial court denied them the opportunity to have a member of the Georgia Bar available to assist in their defense.

The basic legal parameters of the attorney/client conflict of interest issue in a criminal setting are set out in three landmark decisions by the United States Supreme Court. It is fundamental principle that the Sixth Amendment guarantee of effective assistance of counsel includes the right of an accused to be represented by an attorney free of any conflicts of interest. Glasser v. United States, 315 U. S. 60, 70 (62 SC 457, 86 LE 680) (1941). There is a presumptive conflict of interest when one attorney is required to represent multiple defendants over their objection. Holloway v. Arkansas, 435 U. S. 475, 488 (98 SC 1173, 55 LE2d 426) (1978). However, if the defendants do not object to the multiple representation by the attorney until after trial, there is no benefit of a presumption and the defendants must show that an actual conflict of interest existed which impaired their attorney's performance on their behalf. Cuyler v. Sullivan, 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980). Thus, we must initially determine whether appellants' objection to Mr. Butler's representation of both of them was made

known to the court prior to, during or after trial.

The first indication in the record of any objection appears in the trial transcript. During a recess from the individual voir dire, Mr. Butler stated, for the express purpose of perfecting the record, the substance of his conversation with the trial judge in chambers that morning before the trial commenced. The purpose of the in-chambers meeting was for Mr. Butler, on behalf of appellant Thompson, to move for a continuance in order for Thompson to retain another attorney. The grounds asserted were that Thompson allegedly had thought that Emory Walters, a distinguished local attorney, was going to assist in his defense at the trial and that he had only learned that Mr. Walters would not do so within the week before trial. However, we find this assertion lacking credibility. Mr. Walters was representing Brock, who was a state's witness against both Thompson and Keen. This was known by all concerned for at least a month before trial. Moreover, if appellants were as concerned about attorney/client conflicts of interest as they assert, it is inconceivable that the obvious conflict of interest between themselves and Mr. Walters would have escaped them.

We move on to Thompson's expressed desire for another attorney. We use the term "another," meaning additional, as opposed to "an other," meaning substitute, because this is how it was transcribed and because it is more fitting with the entire substance of Mr. Butler's statement for the record. We also set aside our inclination to see this eleventh hour move to get another attorney as a delay tactic because the denial of the motion for continuance is not directly at issue at this point. The issue is whether the substance of the motion put the trial court on notice that appellants, or at least appellant Thompson, were objecting to Mr. Butler's dual representation. We conclude that it did not. The record gives no indication that appellants even perceived any conflict of interest with Mr. Butler then. On the contrary, the record indicates that appellants intended to keep Mr. Butler as their attorney of record and they, or at least Thompson, were seeking time to get an additional attorney to assist Mr. Butler in their defense at trial. (In that regard, we find no abuse of discretion by the trial court in refusing to entertain the dilatory motion. See *Scott v. State,* 151 Ga. App. 840 (1) (262 SE2d 198) (1979); *McLendon v. State,* 123 Ga. App. 290 (2) (180 SE2d 567) (1971)). Under these circumstances, the court had no reason to presume or even suspect a conflict of interest existed. See Cuyler v. Sullivan, 446 U. S. at 346, 347. Therefore, we conclude that Mr. Butler's representation of both appellants was not over their objection. The burden thus is upon appellants to demonstrate to this court that an actual conflict existed which impaired their attorney's

performance. Glasser v. United States, 315 U. S. at 70, 76; see also *Barnes v. State,* 160 Ga. App. 232 (286 SE2d 519) (1981).

Appellants rely in large part upon the testimony of Mr. Butler at the motion for new trial hearing to establish their claim of actual conflict. He testified that he provided ineffective assistance to each appellant because he was hindered by his role as attorney for both of them at the joint trial. For the reasons set forth below, we find this testimony unpersuasive.

It is axiomatic that the Sixth Amendment right to effective assistance of counsel was included in the Constitution to protect criminal defendants from having to face their accusers without the benefit of learned advocates for their defense. It was manifestly not intended as a last ditch defense ploy for defense attorneys. When an appellant can establish that his attorney was laboring under a conflict of interest while conducting his defense, his conviction must be reversed. 446 U. S. at 349; 315 U. S. at 76. Where, however, an appellant relies on that same attorney to provide the evidence of a conflict, as is being done here, we are inherently suspicious.

Our suspicion is grounded upon the attorney's apparent disregard of legal ethics, which does much to destroy his credibility. If we were to take the attorney's testimony that he represented his two clients while under a conflict of interest as being true, that testimony would evince a variety of violations of the code of ethics, particularly the duty of loyalty to his client(s). See, e.g., ABA Code of Professional Responsibility, EC 5-14, EC 5-15, EC 5-16, EC 5-17, EC 5-19, DR 5-105, EC 9-2, EC 9-4 and EC 9-6.[1] See also 446 U. S. at 346 fn. 11. Conversely, if we were to disbelieve the attorney's testimony, that testimony would evince other ethical violations, particularly the duty of honesty and candor to the court. See ABA Code of Professional Responsibility, EC 7-1, EC 7-19, EC 7-26, EC 7-36 and EC 7-39; DR 7-102 (A) (4)-(8). In short, we find the testimony of Phillip Butler at the motion for new trial hearing deserving of little weight.

Having eliminated this basis for appellants' contention, we are left essentially with the post-trial assertions of appellants themselves. Their assertions are for the most part unsubstantiated and are contradicted in material part by the testimony of Mr. Walters at the hearing. The record itself discloses no persuasive evidence of a conflict. We therefore hold that appellants have failed to

---

[1] The ABA's Model Code of Professional Responsibility is set forth in Volume VIII of the Martindale-Hubbell Law Directory (1982) at 4653 et seq. This Model Code has been substantially adopted by the State Bar of Georgia and has been in effect in this state since January 1, 1977. See 238 Ga. at 747 et seq.

demonstrate that an actual conflict of interest existed which adversely affected their trial counsel's performance on their behalf. They have shown no more than a possibility of a conflict and this is insufficient. Cuyler v. Sullivan, 446 U. S. at 350.

2. Appellants further contend that the right to effective assistance of counsel was violated because no member of the Georgia Bar was available to assist in their defense. The substance of this contention is that the trial court deprived them (or at least Thompson) of the opportunity to have local counsel by denying the motion for a continuance. This is wholly without merit. To begin with, it was appellants who chose to retain out-of-state counsel. Mr. Butler was retained by them at least nine months prior to trial, as is evidenced by motions filed by him on their behalf. The record also reflects that Mr. Butler employed an active pre-trial defense. Even if it were true that appellants erroneously believed Mr. Walters would assist Mr. Butler at trial, the error was due to their faulty assumptions. Moreover, again taking their assertions at face value, appellants had at least a week and more likely a month to retain additional trial counsel after it was made absolutely clear to them that Mr. Walters would not assist in their case. Thus, under any version of the circumstances, appellants had no reason for delaying until the moment of trial to notify the court of their desire for additional counsel (coupled with the desire to have the trial postponed). See McLendon v. State, supra. It was, in the final analysis, appellants themselves who denied themselves the opportunity for local counsel, not the trial court.

Furthermore, our review of the transcript convinces us that appellants' Florida lawyer provided reasonably effective assistance at trial. The trial errors isolated and highlighted by appellants are not so significant, either in and of themselves or when taken together with Mr. Butler's general performance over the course of the six-day trial, to constitute ineffective assistance of counsel under the standard enunciated in Pitts v. Glass, 231 Ga. 638 (203 SE2d 515) (1974). Therefore, we hold that appellants were not denied their constitutional right to effective assistance of counsel.

3. Appellants next contend that the trial court committed reversible error when it held a "hearing" on Thompson's motion for continuance outside of appellants' presence. There are a number of flaws in this contention. First, the term "hearing" is used loosely by appellants. There is no indication in the record that the in-chambers meeting between the trial judge and counsel the morning of trial was, or was even intended to be, a hearing. All we know of what transpired in chambers that morning is what Mr. Butler stated for the record (see Division 1, supra), as acknowledged by the court. Mr. Butler did

not then describe the meeting as a hearing. A hearing on the motion had not been requested. For these reasons, we decline to attach the formal label of "hearing" to the in-chambers meeting.

Appellant Thompson cites the case *Andrews v. State,* 196 Ga. 84 (26 SE2d 263), cert. den. 320 U. S. 780 (1943), for the proposition that a defendant must be present when the court takes any action materially affecting his case. In that case it was held that the court's release of an attorney who had been appointed to assist the defendant's retained counsel was not so material to the defendant's case so as to require the defendant's presence when the decision was made. 196 Ga. at 94. We likewise hold that the court's refusal to continue appellants' trial, under the circumstances described in Division 1 and above, was not of such material effect to their case as to require the presence of either or both of them when the decision was made. Compare generally *Palmer v. State,* 155 Ga. App. 368 (271 SE2d 24) (1980). Moreover, we note that it was Mr. Butler who approached the court in this instance and that Thompson was fully aware of it. Testimony at the motion for new trial established that it was Thompson who decided not to accompany his attorney.

4. Appellants' next contention is that the trial court erred in instructing the jury on the law of conspiracy. Appellants concede that there are Georgia cases holding it proper for a trial court to instruct the jury on conspiracy when the crime of conspiracy (Code Ann. § 26-3201) is not alleged in the indictment, but the evidence shows that the crime charged was completed and that a conspiracy existed. See, e.g., *Alexander v. State,* 150 Ga. App. 41 (1) (256 SE2d 649) (1979). They contend, however, that this "questionable practice" here operated to deprive them of due process of law. We disagree. There is nothing peculiar in this case to distinguish it from the other cases in which the instruction was held proper (see *Alexander v. State,* supra, & cits.; see generally *Evans v. State,* 161 Ga. App. 468 (2) (288 SE2d 726) (1982)), and we decline to abrogate the rule allowing instructions on conspiracy under these circumstances.

5. The fourth contention asserted by both appellants is that a state's witness was improperly allowed to assert his privilege against self-incrimination. William Vickery, the tipster responsible for appellants' arrest, invoked the privilege during cross-examination by defense counsel. When a witness refuses to answer a question posed during cross-examination which is relevant to a matter testified to on direct examination, all of the witness' testimony on the same subject matter must be stricken. *Smith v. State,* 225 Ga. 328 (7) (168 SE2d 587) (1969), cert. den. 396 U. S. 1045 (1970). This rule is grounded upon the right of an accused to conduct a thorough and sifting cross-examination of the witnesses against him. Id.; *Fair v. State,* 140 Ga.

App. 281 (1) (231 SE2d 1) (1976). The rule operates hand-in-hand with the impeachment rules also based on an accused's right of confrontation. See *Hines v. State,* 249 Ga. 257 (2) (290 SE2d 911) (1982), and cits.

The invocation of the privilege against self-incrimination by the witness challenged here by appellants occurred when defense counsel asked the witness what he had to do in return for GBI Agent Hallman's (one of the chief agents involved in this case) refraining from having him, his wife and son summoned before a grand jury in connection with a previous drug transaction. This was not relevant to anything Vickery testified about on direct. It was an attempt to impeach the witness by showing his cooperative motive with the GBI and the prosecution. The line of questioning was certainly proper, but the questions the witness refused to answer delved into collateral matter. The fact that the witness cooperated with the state was relevant; specifically how he cooperated was collateral. In other words, the defense made its point when it elicited from the witness that he had cooperated with the GBI (in fact the same agent) previously (under similar circumstances) for his own benefit. The court allowed the defense to develop the point, showing that the GBI pressured the witness into cooperating with them.

We find that the defense was not denied the opportunity to fully cross examine and impeach the witness. The conceivability that the witness' answer might have fallen within the scope of the grant of immunity he was testifying under does not change the fact that it was a collateral matter and both immaterial and irrelevant. Therefore, if any error was committed, it was harmless. Compare *Hines v. State,* supra; *Fair v. State,* supra.

6. The last enumeration of error asserted by both appellants is the claim that the bailiffs were not sworn according to law. This claim is contradicted by the transcript. At a bench conference the court questioned the district attorney on the need to swear the bailiffs and he stated that they had already been sworn that term. Whether or not the oath was administered in accordance with Code Ann. §§ 24-3201 and 59-717 is unknown because the district attorney's statement to the court was not challenged by the defense. Any objection to the administration of the bailiffs' oath was thus waived and we will not now presume error from the silent record. See Code Ann. § 38-114.

7. The remaining enumerations of error are asserted by appellant Thompson. The first of these is his contention that the prosecutor made highly prejudicial remarks in his closing argument that are cause for reversal. The challenged remarks were as follows: "I submit to you, member[s] of the jury, that twenty-three good and honest Grand Jurors will tell you something different than that,

won't they? Because that's not true, either. What do you think the Grand Jury of this county would have done had they heard the witnesses that you heard today? I submit to you that after they finished throwing up they would have indicted them anyway." (Compare *DeNamur v. State,* 156 Ga. App. 270 (1) (274 SE2d 673) (1980)). The "something different" refers to the sentence preceding the quoted language: "Mr. Butler outlined to you that the indictment was something that only Dave Hallman had something to do with." This, in turn, refers to the defense's closing argument, wherein Mr. Butler argued that the indictment resulted from Agent Hallman's going into the closed grand jury room and convincing the grand jury to indict appellants by some unknown means. Thus, it is obvious that the remarks made by the state were in response to those made by the defense. Mr. Butler's remarks were improper and, although they drew no objection, they certainly invited response. The response by the state was equally improper and the trial court correctly sustained the defense's objection to it.

Thompson, however, now asserts that sustaining the objection was insufficient. He argues that the judgment must be reversed because the court failed to order the improper remarks stricken and to issue curative instructions to the jury. We reject this argument because it is well-settled that a sustained objection to improper argument of counsel cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike or denied request for curative instructions, none of which were made below. See *Williams v. State,* 156 Ga. App. 17 (1) (274 SE2d 71) (1980); *Carroll v. State,* 147 Ga. App. 332 (7) (248 SE2d 702) (1978); *Favors v. State,* 145 Ga. App. 864 (2) (244 SE2d 902) (1978).

8. Thompson next claims that the trial court erred by allowing evidence of prior bad acts. See in this regard *State v. Johnson,* 246 Ga. 654 (1) (272 SE2d 321) (1980). The state, on the other hand, contends that there was no evidence of prior bad acts. The evidence referred to by both the state and the defense is the testimony of William Vickery, responding to questions posed by the state in regard to nine planeloads of drugs having come in to his airstrip. Thompson claims that this created the inference that he was involved in those other drug operations. The state claims it only pointed toward the reason Vickery was testifying for the state and why he was apparently doing so reluctantly. After reviewing the transcript carefully, we find that the prejudicial inference could have been drawn initially, but any such inference was dispelled by the state's succeeding questions and the witness' answers thereto after a bench conference regarding this issue.

9. Thompson also asserts that the judgment must be reversed

because the court allowed a Florida detective to testify to the answers he gave to questions asked soon after his arrival at a hospital in Florida. The substance of the contention is that it was error to admit his "confession" without a Jackson-Denno hearing. The contention fails in two material respects. First, Thompson's answers were neither admissions nor confessions, which is the heart of such a hearing. See Jackson v. Denno, 378 U. S. 368, 376-77 (84 SC 1774, 12 LE2d 908) (1964). Second, Thompson did not raise the issue of voluntariness at trial. Failure to do so precludes appellate review of the issue. *Dent v. State,* 243 Ga. 854 (2) (257 SE2d 241) (1979); Wainwright v. Sykes, 433 U. S. 72, 86-7 (97 SC 2497, 53 LE2d 594) (1977).

10. Thompson's final contention is that the court erred in allowing into evidence a Wyoming driver's license in the name of Mike Ross with a picture thereon purported to be Thompson. He asserts it was inadmissible under Code Ann. § 38-630 (a). The state asserts it was admissible under Code Ann. § 38-630 (b). Under § 38-630 the proponent of the evidence has the option of selecting the authentication procedures of subsection (a) *or* subsection (b). The state opted for subsection (b), satisfied the requirements therein and therefore there was no error.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED OCTOBER 5, 1982 —
REHEARING DENIED OCTOBER 22, 1982 —

*Bruce Maloy, Mark J. Kadish, E. Marcus Davis,* for appellants.
*Gary C. Christy, District Attorney, Richard Thomas, Assistant District Attorney,* for appellee.