## A93A0320. BAYSHORE v. THE STATE.
(432 SE2d 251)

POPE, Chief Judge.

Defendant Thomas Guy Bayshore was indicted for three counts of burglary and three counts of theft by receiving stolen property. The jury acquitted him of the burglary charges but convicted him on each count of theft by receiving stolen property. Defendant appeals.

1. Defendant argues the trial court erred in denying his motion to suppress evidence seized from a search of the defendant and in admitting the evidence at trial. We agree.

The evidence shows defendant was a suspect in the three burglaries and the police obtained a search warrant to search for stolen property at the apartment in which defendant was residing. Although the pre-printed portion of the search warrant permitted the naming of a person as well as a premises to be searched, the warrant was issued only for the search of the premises. When the police arrived at the apartment, defendant was standing outside, twelve to fifteen feet from the front door of the apartment, leaning against a car parked in the common parking lot serving the four apartment units in the building. Two officers detained defendant while the others conducted the search of the apartment but defendant was not placed under arrest. When the search was fruitless, the officers also searched a gym bag which was sitting within arm's reach of defendant on the trunk of the car on which defendant had been leaning. Items which had been reported stolen in the three burglaries were found in the bag.

The issue in this case is whether a search warrant for an apartment in a multi-unit building is broad enough to include the search of the individual suspect who is standing outside the premises in a common area, in this case the parking lot which served all four apartment units in the building. The State argues the search was proper pursuant to OCGA § 17-5-28, which permits an officer executing a search warrant to search "any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant." By the officer's own account, however, defendant was not threatening any officer. That the defendant was not searched for protective purposes is illustrated by the fact the two officers who

stayed outside to detain defendant did not search defendant or the bag until after the search of the apartment was complete and yielded no evidence.

Moreover, defendant was not "in the place" to be searched, as that phrase is used in the statute. A search warrant for a dwelling house is commonly held to apply not only to the dwelling but also to the curtilage of the dwelling. For example, in *Bellamy v. State*, 134 Ga. App. 340 (214 SE2d 383) (1975), this court concluded a search warrant for a certain address permitted the search of a vehicle parked in the driveway of the property. But the concept of curtilage is more easily applied to land surrounding a single-family dwelling than to common areas surrounding a multi-family dwelling. When the area in question is a common area serving multiple dwellings, it is less likely that the residents of any one unit have an expectation of privacy or reasonably consider the area to be an extension of the dwelling.

The facts of this case are similar to those in *United States v. Stanley*, 597 F2d 866 (4th Cir. 1979), in which the Fourth Circuit Court of Appeals held that a car parked directly in front of a mobile home which was the subject of a search warrant was not within the curtilage of the home because it was common property which served three other homes in the mobile home park and therefore could not be searched pursuant to the warrant. Just as the case at hand, the *Stanley* case presented a "unique twist in the law" because in the usual case the government argues the area searched was not within the curtilage of a home and therefore could be searched without a warrant. Id. at 870. Here, however, the State argues that the common area where the defendant was standing during the search was part of the curtilage and thus defendant and the bag in his constructive possession were covered by the search warrant for the apartment. "The 'common area' curtilage issue has been a thorny one for the courts. [Cits.] 'Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.' [Cit.]" Id. We conclude that the common parking area was not part of the curtilage of the apartment and was not included in the search warrant issued in this case.

The police could have named defendant in the search warrant or could have continued to detain him while a warrant for the search of his person and possessions was obtained. However, since the facts show defendant was not under arrest, was not attempting to flee and no other exigent circumstances were present to justify a warrantless search, the search of defendant's bag was illegal and the trial court erred in permitting the fruits of that search to be presented in evidence at trial.

2. Without the improperly seized evidence, insufficient evidence was presented to permit a rational trier of fact to find defendant guilty beyond a reasonable doubt. Thus, defendant's conviction must be reversed.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JUNE 3, 1993.

*Peevy & Lancaster, G. Wayne Lancaster*, for appellant.

*Thomas C. Lawler III, District Attorney, Scott A. Smeal, Assistant District Attorney*, for appellee.