S94G1143. ESPINOZA v. THE STATE.
(454 SE2d 765)

FLETCHER, Justice.

We granted the writ of certiorari to consider whether the Court of Appeals properly applied the concept of curtilage. We disapprove of the term "common area curtilage," on which the Court of Appeals relied, and reverse on the ground that police officers discovered the evidence within the curtilage of the defendant's apartment for which they did not have a search warrant.

A joint city-county narcotics unit obtained a search warrant for the residence of Alejandro Espinoza at 251-B Dickson Road, Marietta, Georgia based on information received from a federal drug enforcement agent following an airport search of Alejandro in which $38,300 was seized. Ten narcotics agents searched 251-B of the duplex, which was specified in the warrant, and then 251-A, which was not listed. After searching both residences, the agents searched the grounds and found a garbage bag containing five pounds of marijuana in bushes seven to eight feet from the driveway leading to unit A. The grand jury indicted Lorenzo Espinoza, the resident of 251-A and brother of Alejandro, for possession with intent to distribute marijuana. It did not indict Alejandro.

The trial court granted Lorenzo's motion to suppress, finding

that the marijuana was found "on the grounds of 251-A and/or 251-B." In its conclusions of law, the trial court determined that the police officers did not have a legal right to enter Lorenzo's apartment, the marijuana was found within the curtilage of 251-A, and the state could not introduce at his trial any evidence found in his residence or curtilage. The trial court declined to decide whether the illegal drugs were also within the curtilage of 251-B. The Court of Appeals reversed. It found that the marijuana was located within the curtilage of 251-B, as well as 251-A, as part of the "common area curtilage which is reasonably an extension of each brother's dwelling." The appellate court held that the marijuana was lawfully seized under the valid search warrant of 251-B. *State v. Espinoza*, 212 Ga. App. 814, 818 (442 SE2d 911) (1994).

1. Whether evidence is found within the curtilage of a residence is a mixed question of fact and law. See *State v. McBride*, 261 Ga. 60, 65-66 (401 SE2d 484) (1991) (Hunt, J., concurring specially). On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts. See *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994).

2. The Georgia Constitution protects persons from unreasonable searches and seizures.

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.

Ga. Const., Art. I, Sec. I, Par. XIII; see U. S. Const., amend. IV.[1] Since the Supreme Court's opinion in *Katz v. United States*, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967), the Fourth Amendment's protection depends on whether a person has a reasonable expectation of privacy. *Oliver v. United States*, 466 U. S. 170, 177 (104 SC 1735, 80 LE2d 214) (1984); see *Bunn v. State*, 153 Ga. App. 270, 272-273 (265 SE2d 88) (1980). A person "may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver*, 466 U. S. at 178.

The Fourth Amendment protects this area, known as the curtilage, as an exception to the open fields doctrine. See id. at 180, n. 11.

---

[1] Our decision in this case is based on our interpretation of the Georgia Constitution, although we refer to federal law for guidance. See *Michigan v. Long*, 463 U. S. 1032, 1041 (103 SC 3469, 77 LE2d 1201) (1983).

This court has defined curtilage as " 'the yards and grounds of a particular address, its gardens, barns, (and) buildings.' " *Landers v. State*, 250 Ga. 808, 809 (301 SE2d 633) (1983). Like residents in single-family homes, apartment residents have a reasonable expectation of privacy in the curtilage surrounding their apartment. *Bunn*, 153 Ga. App. at 273. The United States Supreme Court has identified four factors to assist in defining the extent of a home's curtilage. They are

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U. S. 294, 301 (107 SC 1134, 94 LE2d 326) (1987); see also *Bayshore v. State*, 208 Ga. App. 828, 829 (432 SE2d 251) (1993) (listing similar factors). These factors are useful tools for analysis to the extent they illuminate "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U. S. at 301. Although the boundaries of the curtilage are clearly marked for most homes, *Oliver*, 466 U. S. at 182, n. 12, the analysis becomes more complicated when the residence is an apartment in a multi-family dwelling in an urban area. See *United States v. Acosta*, 965 F2d 1248, 1256 (3d Cir. 1992); *Bayshore*, 208 Ga. App. at 829.

In this case, the facts were not disputed and the credibility of the witnesses was not an issue. Applying the law to the undisputed facts, we hold that the trial court was correct in its legal conclusion that the marijuana was seized within the curtilage of Lorenzo's dwelling following the illegal search of his apartment. Lorenzo lived in apartment 251-A on the left side of a duplex which was approximately 60 yards from the road and hidden from view. His apartment was reached by the left half of a private driveway that was shaped like a stethoscope; unit B was reached by the right half. The garbage bag was found among bushes seven to eight feet to the left of Lorenzo's driveway *outside* the stethoscope, approximately thirty yards from the house. Thus, the bag was discovered in a place where visitors to the duplex would not be expected to go. See 1 W. LaFave, Search and Seizure, § 2.3 (f), at 412-413 (2d ed. 1987) (Fourth Amendment does not cover police observations from places where visitors are expected, such as walkways, driveways, and porches).

The absence of a fence enclosing Lorenzo's yard is not conclusive, particularly since he rented the property. See *Dunn*, 480 U. S. at 301,

n. 4; *Acosta*, 965 F2d at 1256. Nor does his lack of exclusive control over the land eliminate his expectation of privacy. See 1 W. LaFave at 414; *Fixel v. Wainwright*, 492 F2d 480, 484 (5th Cir. 1974) (rejecting government's argument that the multi-unit character of the four-unit apartment building meant that defendant relinquished any right of privacy related to the fenced backyard). Given the distance from the road, the secluded nature of the grounds, and the bag's location on the side of 251-A's driveway away from the duplex, Lorenzo had a reasonable expectation of privacy in the area where the bag was found.

3. As part of its legal conclusions, the trial court attempted to reserve the issue whether the illegal drugs were also within the curtilage of 251-B. The trial court should have determined whether the marijuana was also within the curtilage of 251-B since the search warrant was issued for that apartment.

In deciding that issue, the Court of Appeals concluded that the marijuana was found within the curtilage of both 251-A and 251-B as part of the "common area curtilage." This term is a misnomer. It has been used in only three reported cases. See *Espinoza*, 208 Ga. App. at 817; *Bayshore*, 208 Ga. App. at 829; *United States v. Stanley*, 597 F2d 866, 870 (4th Cir. 1979). ("The 'common area' curtilage issue has been a thorny one for the courts.") If apartments in a multi-unit building share space, such as a foyer or parking lot, the shared space is a common area in which the residents generally have no reasonable expectation of privacy, except when the area is locked and not readily accessible to the public. See *Bunn v. State*, 153 Ga. App. at 275; 1 W. LaFave at 388-389 (listing cases). In contrast, an apartment resident has a reasonable expectation of privacy in the dwelling's curtilage. Thus, it is confusing to combine the concepts of "common area" and "curtilage" in deciding whether a particular area adjoining an apartment building is entitled to protection under the Georgia Constitution. The test should be the reasonableness of the resident's expectation of privacy and the officer's reasons for being in the yard. See *United States v. Magana*, 512 F2d 1169, 1171 (9th Cir.), cert. denied, 423 U. S. 826 (1975).

4. Like the Court of Appeals, we conclude that the evidence in the record is sufficient to determine whether the marijuana was within the curtilage of 251-B. While different apartments in multiunit buildings may share curtilage, the marijuana was not found within the curtilage shared by both apartments. It was not found in the hallway leading to both apartments or in the front yard within the stethoscope formed by the driveways. The resident of 251-B would have no reasonable expectation of privacy in a portion of the yard that was not directly connected to that unit, its driveway, or its side of the duplex. Under the circumstances in this case, the trial

court properly granted Lorenzo's motion to suppress because he was the only resident who had a reasonable expectation of privacy in the yard outside the driveway leading to his unit.

*Judgment reversed. All the Justices concur, except Hunstein, Carley, and Thompson, JJ., who dissent as to Division 4 and the judgment.*

THOMPSON, Justice, dissenting.

While I concur in Divisions 1, 2 and 3, I dissent to Division 4. I would remand this case to the trial court to ascertain whether the marijuana was found within the curtilage of apartment 251-B because the record is inadequate for this Court to determine the boundaries of that curtilage.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED MARCH 15, 1995.

*Steve T. Woodman,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, William M. Clark, Assistant District Attorneys,* for appellee.