A00A0791. HUNTER v. THE STATE.
A00A0894. LEE v. THE STATE.
(536 SE2d 157)

ANDREWS, Presiding Judge.

Larry Dean Hunter and Eric Eugene Lee were jointly indicted, tried, and found guilty of possession of cocaine with intent to distribute. In their appeals, consolidated for consideration in this opinion, Hunter and Lee claim that the evidence used to convict them was obtained as the result of an illegal detention in violation of the Fourth Amendment and that the trial court erred by denying their motions to suppress on this ground. Finding no error in the denial of the motions, we affirm the judgments of conviction.

Based on reliable information that illegal drug activity was taking place in an apartment located in a known drug trafficking area in the City of Springfield, police obtained a no-knock warrant to search the apartment. When a team of police officers arrived at the apartment to execute the search warrant, they saw a car parked in front of and facing the ground floor apartment. The officers saw three men, two of whom were Hunter and Lee, standing near the front of the car with the hood of the engine compartment raised. In that position, the men were standing about five or six feet from the apartment door on a sidewalk in front of the apartment. As the officers approached the apartment to enter on the search warrant, one of the officers, who was assigned to cover the area in front of the apartment while the other officers entered, ordered all three men to lie prone on the ground with their hands visible. The officer, who was armed with a shotgun, testified that he detained the three men in this position because they were located close to the door of the apartment where a potentially dangerous entry and search were taking place and that it was necessary for the safety of the entering officers and for the safety of the three men. The men were detained on the ground while the other officers entered the apartment and determined that no one was inside — a period of no more than one minute.

After the officers determined no one was inside, the three men were allowed to stand, and officers asked them for identification and if they had any connection to the apartment about to be searched. Lee informed the officers that his girlfriend lived in the apartment and that he occasionally stayed there. Simultaneously, an officer exiting the apartment noticed a matchbox on the ground near the front of the car where Hunter and Lee were standing. The officer picked up the matchbox, opened it, and found that it contained what appeared to be five or six rocks of crack cocaine. At that point, the officers detained the three men for possession of the apparent cocaine. Immediately thereafter, another officer saw a purple "Crown Royal" liquor bag lying on the engine inside the open engine compart-

ment adjacent to where Hunter was standing. The officer picked up the bag, opened it, and found that it contained a bottle containing eight rocks of what appeared to be crack cocaine, along with Hunter's driver's license, and some money. After being arrested, Lee gave police a statement admitting that the substance in the matchbox was his cocaine that he planned to sell, and Hunter also gave police a statement admitting that he owned the apparent cocaine in the "Crown Royal" bag and planned to sell it. The suspected cocaine in the matchbox and the "Crown Royal" bag was tested at the State Crime Lab and proved to be cocaine.

1. Prior to trial, Hunter and Lee filed identical motions to suppress evidence of the cocaine and the subsequent statements on the ground that this evidence was the tainted product of an illegal detention in violation of the Fourth Amendment, which commenced when the officer ordered them to lie on the ground at gunpoint while other officers entered the apartment on the no-knock search warrant. After a hearing on the motions, the trial court concluded the detention was valid and denied the motions.

Although the trial court properly denied the motions to suppress, we conclude that the validity of the brief initial detention at gunpoint while the officers entered the apartment is not the dispositive issue in this case. The issue raised by the motions to suppress was whether the cocaine found by the officers and the subsequent statements given to the officers were the product of the initial detention, which Hunter and Lee claim was illegal. We find they were not connected to the initial detention.

The evidence shows that, when the officers arrived at the apartment and saw Hunter and Lee standing on the sidewalk a short distance from the apartment door, they had no reason to suspect that they were engaged in any illegal activity. They were detained on the ground at gunpoint, not because they were suspected of illegal acts, but because the officers, who were about to make a potentially dangerous entry through the apartment door pursuant to the no-knock search warrant, believed it was necessary to protect themselves and Hunter and Lee. This detention lasted for less than a minute, the period of time it took the officers to enter the apartment and determine that no one was inside. Once this determination was made, the initial detention ended, and Hunter and Lee were released from being detained on the ground at gunpoint. Although the officers still had no basis to believe the men were involved in criminal activity at that point, they asked Hunter and Lee to state their names and any connection they might have to the apartment about to be searched. Lee informed the officers that he stayed there occasionally with his girlfriend. This questioning was a "first level" police-citizen encounter which did not implicate the Fourth Amendment. *State v. Burks*,

240 Ga. App. 425, 426 (523 SE2d 648) (1999). While this "first level" questioning was taking place, an officer found the matchbox on the ground containing cocaine. The officer who spotted the matchbox was not searching for contraband to incriminate Hunter and Lee. He was walking out of the apartment while executing the search warrant in a place where he was entitled to be when he saw the matchbox lying on the ground a few feet in front of the apartment. Under these circumstances, the matchbox was abandoned property to which the Fourth Amendment rules regarding search and seizure did not apply. *Edwards v. State*, 239 Ga. App. 44, 45 (518 SE2d 426) (1999). Accordingly, the officer found the cocaine in the matchbox by lawful means.

Thus, finding the abandoned cocaine on the ground near Hunter and Lee was unconnected to the initial detention at gunpoint. It provided the officers with an independent reason to detain them in connection with the cocaine and ultimately led to the discovery of the additional cocaine in the "Crown Royal" bag. Whether finding the cocaine in the matchbox provided only reasonable suspicion of criminal activity to detain and question the men about the cocaine under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), or probable cause to detain and arrest was not raised by the motions to suppress and therefore is not an issue on appeal.

Furthermore, neither Hunter nor Lee claims that the initial detention, which they claim was illegal, coerced them into abandoning the cocaine, and there is no evidence to support such a claim. See *Edwards*, 239 Ga. App. at 45. To the contrary, the officer who initially detained Hunter and Lee at gunpoint testified that he observed them for a few seconds prior to the detention and during the detention and saw no attempt by them to discard or abandon anything. Since the evidence shows that Hunter and Lee did not abandon anything during the initial detention, there was no basis to assert that the cocaine found in the matchbox should have been suppressed because it was abandoned during the coercive influence of an illegal detention. *Milton v. State*, 232 Ga. App. 672, 677 (503 SE2d 566) (1998).

Because there is no basis to conclude that the cocaine found by the officers or the subsequent statements given by Hunter and Lee were the product of the brief initial detention at gunpoint, the trial court did not err by denying the motions to suppress. Even though the trial court based its ruling on the conclusion that the initial detention was valid, an issue we find unnecessary to address, we affirm because the ruling was right for other reasons.[1] *Benton v.*

---

[1] Although the validity of the detention of Hunter and Lee at gunpoint is not the dispositive issue in this case, we agree with the trial court that this brief detention for about one minute while the officers entered and cleared the apartment was justified by the need to

*State*, 240 Ga. App. 243, 245 (522 SE2d 726) (1999).

2. The evidence, as set forth in Division 1, supra, was sufficient to allow a rational trier of fact to conclude that Hunter and Lee were guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 13, 2000 ▋▋▋▋▋▋▋

*Kicklighter & Persse, Robert L. Persse*, for appellant (case no. A00A0791).

*Ronald K. Thompson*, for appellant (case no. A00A0894).

*R. Joseph Martin III, District Attorney, Tony A. May, Assistant District Attorney*, for appellee.

---

protect the safety of the officers and Hunter and Lee. We recognize that, standing on the common sidewalk outside the apartment, Hunter and Lee were not in the apartment to be searched, nor were they within the curtilage of the apartment. *Bayshore v. State*, 208 Ga. App. 828, 829 (432 SE2d 251) (1993). Accordingly, the officers were not authorized to detain and search them in conjunction with executing the search warrant for the apartment, and no such search occurred here. Id.; compare OCGA § 17-5-28 (1). Nevertheless, applying the reasonableness standard embodied in the Fourth Amendment to both the character of the brief detention and its justification, we find that it was reasonable under the facts of this case. See *Terry v. Ohio*, 392 U. S. 1; *Michigan v. Summers*, 452 U. S. 692 (101 SC 2587, 69 LE2d 340) (1981); *People v. Glaser*, 11 Cal.4th 354 (902 P2d 729) (1995).