## A09A1501. THOMAS v. THE STATE.
(684 SE2d 391)

ADAMS, Judge.

Tyrone Eugene Thomas was tried and convicted of trafficking in methamphetamine, trafficking in cocaine, possession of marijuana, manufacturing methamphetamine, possession of methamphetamine with intent to distribute, and forgery in the second degree (two counts). Following the denial of his motion for new trial, Thomas appeals and raises three enumerations of error.

Construed in favor of the verdict, the evidence shows that two officers spoke with Thomas in a hospital emergency room where he was being treated for gunshot wounds. Thomas explained that while walking near his apartment he had been threatened by two assailants and shot in both legs. He managed to get back to his apartment. Thomas signed a consent to search his apartment but the form showed the wrong apartment number. When the officers reached the apartment, they realized it was the wrong address. The officer on scene called back to the hospital and, with the aid of another officer there, obtained another consent to search, with the correct address.

In the apartment, officers found blood throughout the apartment, marijuana on the couch in plain view, a bag containing several small blue and purple pills, a pink pipe, and two plastic pipes with residue on them. The investigating officer then received a telephone call advising him that Thomas had withdrawn his consent. The officers withdrew from the apartment, and the apartment was secured. Because officers witnessed illegal drugs in plain sight, they applied for and obtained a search warrant for the apartment.

In the search pursuant to the warrant, officers found in the back bedroom a large pill press machine, several large drums containing unidentified powders, and plastic baggies with white pills in them. In the kitchen area, officers found a cooler with empty pill capsules, a capsule-filling machine, four bags of marijuana totaling 129.8 grams, and a plastic container holding white powder labeled "Dextromethorphan Hydrobromide." The officers also found six counterfeit $100 bills, a glass pipe, and one pound of hashish. In a detached garage, the officers found two additional pill presses (one press was very

large and still in its original packaging material) and a safe that contained 38.96 grams of methamphetamine, 38.76 grams of 80% pure cocaine, 41.9 grams of marijuana and 6 grams of Ecstasy powder. The large press required a forklift and tow truck to remove.

After being advised of his *Miranda* rights, Thomas waived his rights. In his statement, he admitted he used the pill press machine to make something similar to Ecstasy. He admitted selling the pills for $5 each and that he had made approximately 4,000 to 5,000 tablets. He admitted changing the formula for the Ecstasy to try to make it more potent because he had received complaints from customers. He admitted having placed cocaine and methamphetamine in the safe in the garage. And he admitted that he had purchased one pound of marijuana and separated it into one-ounce bags. He admitted knowing he had the counterfeit money in his possession.

1. Thomas contends he was improperly denied his constitutional right to represent himself at trial. Thomas refers to only one place in the record where he claims he asked to represent himself. After the State had rested, and after the only defense witness save the defendant, Thomas asked the court if he could give part of the closing argument. After the court explained that his counsel would give any closing after consulting with Thomas, Thomas asked, "So if I release him as counsel I still can't close?" The court answered that it was not authorizing the release of counsel. Thomas's trial counsel testified that Thomas had never asked to proceed pro se.

"While it may be error to deny one the right to defend his own cause where the right was timely urged prior to trial, the defendant cannot frivolously change his mind in midstream." (Citations and punctuation omitted.) *Preston v. State*, 257 Ga. 42, 44-45 (3) (354 SE2d 135) (1987) (affirming denial of defendant's request to represent himself); *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990) (request during midst of trial properly denied).

2. Thomas contends he was denied his right to be present at two critical stages of his trial, the first being when counsel sought and was denied a continuance. The portion of the record cited by Thomas shows that the court noted that Thomas was absent when counsel made the motion and the court denied it. But the court went on to say that it would perfect the motion on the record with Thomas present later in the trial. Thomas has failed, however, to show by the record that this announced procedure was not followed. Accordingly, we find nothing to review. Furthermore, a court's refusal to continue a trial is not necessarily an event that is material to a case for the purposes of determining whether defendant was absent for a critical stage of the proceedings, i.e., one that materially affected his case. See, e.g., *Keen v. State*, 164 Ga. App. 81, 86 (3) (296 SE2d 91) (1982).

And here, Thomas has done nothing to show that the court's denial of the continuance was "of such material effect to [his] case as to require [his presence] when the decision was made." Id.

Thomas also contends he was denied his right to be present when the court twice met with a juror about the juror's father's medical emergency and subsequent open heart surgery. Both meetings were outside the presence of the State, Thomas, and his counsel. But we find no prejudice. Of course there should be no communication between the trial judge and the jury outside the presence of the defendant and his counsel "which would tend in any manner to prejudice the accused . . . ; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial. [Cits.]" (Punctuation omitted.) *Collins v. State*, 191 Ga. App. 289, 290 (2) (381 SE2d 430) (1989).

Here, the matter discussed solely related to the juror's desire to be at the hospital for his father's open heart surgery. An accommodation was made in the scheduling of the last day of the proceedings, which included the charge conference, the jury charge, the closing argument and the deliberations. We conclude that the character of the communication clearly shows that it could not have been prejudicial to the accused. See, e.g., *Hurston v. State*, 206 Ga. App. 570, 572 (2) (426 SE2d 196) (1992) (trial judge's instruction to jury to cease deliberations until further notice, even though topic was material to defendant's right to a fair trial, was not prejudicial under the circumstances). Thomas has offered nothing to the contrary.

3. Finally, Thomas contends the trial court erroneously denied his motion to suppress evidence found in the detached garage. He also argues that trial counsel was ineffective by failing to object at trial to this evidence. "On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts. See *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994)." *Espinoza v. State*, 265 Ga. 171, 172 (1) (454 SE2d 765) (1995).

The search warrant specifically included the detached garage. But Thomas argues the garage was not in the curtilage of the apartment where contraband was seen and that therefore there was no probable cause to search the garage and it should not have been included in the warrant. But a warrant is not that limited.

"A warrant which authorizes the search of a particular dwelling extends by implication to areas within the curtilage of the dwelling. 'Curtilage' has been defined as 'the yards and grounds of a particular address, its gardens, barns, and buildings.' " (Citations and punc-

tuation omitted.) *McConville v. State*, 228 Ga. App. 463, 467 (2) (491 SE2d 900) (1997). See also *United States v. Dunn*, 480 U. S. 294, 301 (107 SC 1134, 94 LE2d 326) (1987) (central question is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection"). Here, the detached garage was associated with Thomas's apartment and thus fully accessible to him and subject to his control. See *United States v. Cannon*, 264 F3d 875, 881 (9th Cir. 2001) (two locked storage areas in building separate from residence that were under the control of the owner of the residence were within the curtilage). Compare *United States v. Cruz Pagan*, 537 F2d 554, 558 (1st Cir. 1976) (with an apartment, "a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control"; common underground parking garage was not within curtilage). Accordingly, we find no error in the scope of the warrant. See generally *McConville*, 228 Ga. App. at 467 (2) (probable cause for search of residence established when officers observed contraband in detached garage).

The cases cited by Thomas do not support his argument. See *Espinoza*, 265 Ga. at 171 (2) (unfenced area near driveway of duplex was within curtilage of nearest duplex unit; area was not in curtilage of other half of duplex); *Bayshore v. State*, 208 Ga. App. 828 (1) (432 SE2d 251) (1993) (common parking area of apartment building not in curtilage); *Jones v. State*, 254 Ga. App. 863, 866 (3) (564 SE2d 220) (2002) (backyard shed within curtilage).

Because the court correctly denied the motion to suppress, Thomas's assertion of ineffective assistance related to this point is moot.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

---

DECIDED SEPTEMBER 29, 2009 — ▮▮▮▮▮

*Brian Steel*, for appellant.
*Tommy K. Floyd, District Attorney, James L. Wright III, John A. Pipkin III, Assistant District Attorneys*, for appellee.