**FIFTH DIVISION
RICKMAN, C. J.,
MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 4, 2022**

# In the Court of Appeals of Georgia

A21A1358. THE STATE v. ARROYO.

RICKMAN, Chief Judge.

After Jerry Arroyo was charged with trafficking cocaine, he filed a motion to suppress the drugs seized from his apartment on the ground that the officers who conducted a dog's open-air sniff outside the apartment's front door were not authorized to be there. On appeal from the trial court's grant of Arroyo's motion, the State argues that under the undisputed facts, the open-air sniff occurred in a common area rather than within the protected curtilage of the apartment, with the result that the search was reasonable as a matter of law. We disagree and therefore affirm.

We acknowledge the "three fundamental principles which must be followed when conducting appellate review" of a trial court's ruling on motion to suppress:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, *the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment*.

(Citation and punctuation omitted; emphasis supplied.) *Miller v. State*, 288 Ga. 286, 286 (702 SE2d 888) (2010); see also *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015) ("The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony") (citation and punctuation omitted).

Thus construed in favor of the judgment, the record at the pre-trial hearing and at trial[1] shows that on October 10, 2016, a Sandy Springs police officer received a tip from a confidential informant that the informant had seen "several" kilograms of

---

[1] In reviewing a trial court's decision on a motion to suppress, we consider "all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing." (Footnote, punctuation, and emphasis omitted.) *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007).

2

cocaine inside Arroyo's apartment. The investigator and a K-9 unit arrived at the apartment complex shortly after noon. Although the investigator first testified that the complex did not have an exterior gate, he later testified that there was such a gate, that it was open "during business hours" and shut at night, and that "you ha[d] to have a key fob or a number to get in at the gate – the call box." The investigator could not recall whether he and his partner actually did anything to assist the gate opening when they entered the complex. The officers bypassed the leasing office to avoid any "tipp[ing] off" of tenants, understanding as they did so that unauthorized visitors could be asked to leave.

The investigator testified that the front door to Arroyo's apartment, designated as Apartment G, was located on an upper floor, with three other apartments' doors opening onto the same open-air corridor "inside the building." When the K-9 officer conducted a leashed dog sniff along the corridor, the dog alerted only in front of Apartment G and lay down there. When the officers knocked on the door, Arroyo answered. A woman and children were also present. The officers detained Arroyo while they obtained a search warrant, which took less than two hours. The team executing the warrant found the cocaine in a suitcase in one of the apartment's two

3

bedrooms. The suitcase contained clothes in Arroyo's size, and a second bag nearby contained his passport.

Arroyo was arrested and charged with trafficking cocaine. In May 2019, Arroyo filed motions to suppress the statements he made at the scene as well as the cocaine. After a pretrial hearing, the trial court granted Arroyo's motion to suppress the statement but denied his motion to suppress the cocaine, and the case proceeded to trial. After the State rested, however, the trial court reconsidered its previous ruling, granted Arroyo's motion to suppress the drug evidence, and declared a mistrial. After further proceedings, including the filing and withdrawal of a petition for mandamus, the trial court filed a written order confirming its grant of Arroyo's motion. The trial court found that the "open-air sniff" took place "outside of the apartment doorway" and noted the absence of any testimony that the investigator himself could smell drugs from that spot. Based on the officers' testimony, the trial court concluded that "the area outside of Apartment G where [the dog] conducted an 'open-air sniff' was within the curtilage" of the apartment, that Arroyo had "a reasonable expectation of privacy [there]," that the open-air sniff was therefore "illegal," and that the cocaine eventually seized was properly suppressed as the fruit of that illegal search.

On appeal from this ruling,[2] the State argues that the trial court erred when it granted the motion because the area where the open-air sniff occurred was not part of the protected curtilage.[3] We disagree.

The search of the area outside of the apartment doorway at issue here, conducted without a warrant, is "presumed to be invalid, and the State has the burden of proving otherwise." *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015). As the Supreme Court of Georgia noted in *Espinoza v. State*, 265 Ga. 171 (454 SE2d 765) (1995):

> Whether evidence is found within the curtilage of a residence is a mixed question of fact and law. On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts.

---

[2] See OCGA § 5-7-1 (a) (4), which authorizes a State's appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized . . . in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first[.]"

[3] We do not address the State's contention that the affidavit used to obtain the warrant had sufficient information, independent of the K-9 alert, to justify the search because the alert was a principal part of the "totality of the circumstances" described in the affidavit. See *Claire v. State*, 247 Ga. App. 648, 649 (544 SE2d 537) (2001) (magistrate evaluating an affidavit in support of obtaining a warrant must consider "all the circumstances presented in the affidavit").

(Citation omitted.) Id. at 172 (1). "Although the boundaries of the curtilage are clearly marked for most homes, the analysis becomes more complicated when[, as here,] the residence is an apartment in a multi-family dwelling in an urban area." (Citations omitted.) Id. at 173 (1). *Espinoza* also directs our attention to the United States Supreme Court's decision in *United States v. Dunn*, 480 U.S. 294 (107 SCt 1134, 94 LE2d 326) (1987), which lays out four factors to be considered in defining the extent of a curtilage:

> "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by."

*Espinoza*, 265 Ga. at 173 (2), quoting *Dunn*, 480 U. S. at 301; see also *Florida v. Jardines*, 569 U.S. 1, 6-7 (II) (A) (133 SCt 1409, 185 LE2d 495) (2013) (setting out the analytical framework applicable to a police dog open-air sniff on the front porch of a private home). Finally,

> the touchstone of Fourth Amendment analysis has been the question whether a person has a constitutionally protected reasonable expectation of privacy. The Amendment does not protect the merely subjective

expectation of privacy, but only those expectations that society is prepared to recognize as reasonable.

(Citations omitted.) *Scott v. State*, 270 Ga. App. 292, 293 (606 SE2d 312) (2004).

Construing the record in favor of the trial court's judgment, as we are required to do, we must conclude that the trial court did not err when it suppressed the evidence at issue. As to the first *Dunn* factor, proximity, the evidence supports a conclusion that the open-air sniff took place at or immediately in front of the apartment door and that this area was within the protected curtilage. See *Earl v. State*, 309 So.3d 641, 649 (Ala. Crim. App. 2020) (use of a dog "to sniff the door seams of [an] apartment" was an unreasonable and illegal search). As to the second *Dunn* factor, enclosure, some evidence showed that the apartment complex had an exterior gate that sometimes excluded the general public from the entire property, including the corridor in front of the apartment itself. See *United States v. Whitaker*, 820 F.3d 849, 853 (II) (A) (7th Cir. 2016) (dog sniff performed at the door of an apartment was an unreasonable search; a tenant had a "reasonable expectation against persons in the hallway snooping into his apartment using sensitive devices not available to the general public"). The same evidence could also be construed as an attempt to limit "the nature of the uses to which the area is put" to visits by tenants and their

authorized guests. See *Dunn*, 480 U. S. at 301; *United States v. Thomas*, 757 F.2d 1359, 1367 (A) (1) (2d Cir. 1985) (use of a trained dog outside an apartment door "impermissibly intruded on [an occupant's] legitimate expectation [of privacy]").

"[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress." (Footnote and punctuation omitted; emphasis in original.) *State v. Osterloh*, 342 Ga. 668, 673 (804 SE2d 696) (2017). Here, the trial court was authorized to weigh the evidence before it as to proximity, exclusion, and use, and then to conclude that Arroyo had some reasonable expectation of privacy in the area immediately outside of his apartment door as within the curtilage of that apartment. We therefore affirm the trial court's suppression of the evidence later recovered from the apartment as the product of an unreasonable search of the protected curtilage by this K-9 unit.[4] See *Espinoza*, 265 Ga. at 173-174 (2) (absence of a fence enclosing a renter's yard was not "conclusive" as to whether the area was within the curtilage;

---

[4] Our holding should not be read as establishing any broad rule that K-9 open-air searches of the hallways of multi-unit apartment buildings are constitutionally impermissible. On the contrary, each case will turn on its own facts, as developed (or not) in the record and as found by the trial court, subject to appellate review only for factual or legal error. See *Espinoza*, 265 Ga. at 172 (1) ("On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law.").

8

"lack of exclusive control" does not "eliminate [an] expectation of privacy"). Compare *United States v. Miravalles*, 280 F.3d 1328, 1332-1333 (11th Cir. 2002) (no reasonable expectation of privacy in the common areas of an apartment building with a malfunctioning and unlocked front door when "tenants had little control over those areas, which are available for the use of other tenants, friends, and visitors," including delivery and postal workers).

*Judgment affirmed. McFadden, P. J., and Senior Appellate Judge Herbert E. Phipps concur*.