### 71372. GALLOWAY v. THE STATE.
(342 SE2d 473)

McMURRAY, Presiding Judge.

Search and seizure. Via indictment, defendant was charged with the offense of aggravated assault. It was alleged that on June 9, 1984, defendant made "an assault on the person of Jessie Cleveland with a certain gun, a deadly weapon, by shooting at the said Jessie Cleveland with said gun. . . ." Following the entry of a plea of not guilty, defendant was tried by a jury. A verdict of guilty was returned and defendant was sentenced to confinement for a period of ten years. He appeals, enumerating error solely upon the denial of his motion to suppress evidence.

The following facts were adduced at the motion to suppress hearing: On June 9, 1984, Officer A. L. Bartlett of the Henry County Police Department, responded to a radio report about a shooting incident. Arriving at the home of the complainant, Jessie Cleveland, the officer was told that a shot had been fired at Cleveland's vehicle (which was occupied at the time by Cleveland and his family) by a passing motorist with a handgun.

The officer examined Cleveland's vehicle and observed a bullet hole in the vicinity of the left rear window. The complainant told the officer that he knew where the assailant lived. The complainant described the assailant's vehicle, a white van with a blue stripe, and he gave the officer the tag number of the vehicle. Cleveland also gave the officer directions to the assailant's house. Armed with this information, Officer Bartlett, accompanied by another policeman, Sergeant

Gardner, who joined the investigation, went to the home of the alleged perpetrator.

Defendant's house sat about 100 or 125 feet from the road and was surrounded by a fence which stood approximately 25 feet away. The driveway was located on the outside of the fence. In other words, the fence was between the driveway and defendant's house. There was a gate at the entrance to the driveway. (Apparently, another fence bordered defendant's entire property.)

About 20 minutes after the shooting occurred, the police neared defendant's house. Officer Bartlett observed a van parked in the driveway. The van matched the description of the van which had been given to the police by the complainant.

The driveway gate was open. The police entered the driveway and approached the van. Officer Bartlett knew the van, which was situated approximately 75 feet from the road, was on private property. Nevertheless, the officer continued his investigation.

With the aid of a flashlight, Officer Bartlett observed a handgun in the van. The officer grabbed the gun and examined it. In the officer's words: "I looked in the van from the outside and the driver's window was down. And I was looking in the van to see if possibly the subject may be in the van for our safety and I saw the handle of a handgun sticking out of the little shelf up on the top and the handle was sticking out. So I reached through the window and got the gun, opened it up and one shot had been fired."

In the meantime, the defendant came out of his house and stood by the fence. He shouted at the police officers, informing them they had no right to search his van without a warrant. Upon being urged by the sergeant accompanying him, Officer Bartlett placed the gun back in the van.

The police left defendant's property. A warrant subsequently was obtained for defendant's arrest and defendant was taken into custody. The gun was not seized.

At trial, Officer Bartlett testified upon direct examination as follows: "Q. All right, sir. You went up to the van and looked at it. A. Yes, sir. Q. You said you put your hand on it to see if it was warm and it was. What did you do next? A. I walked back around towards the driver's side of the van. The window was open. And I had my flashlight and I looked inside the van and in a cubby hole, right above the driver's seat — a little cubby hole up on the top, and there was a gun handle — the handle of a gun sticking out the cubby hole. Q. What did you do after you saw that? A. I reached in and pulled the gun out and I opened it up to see if it was loaded. Q. What kind of gun was it? A. It was a Charter Arms 38 special. Q. Okay. How many bullets did it hold? A. Five. Q. You say you opened the breech? A. Yes, sir, I opened the breech. Q. Did you observe the bullets inside?

A. Yes, sir, it had five casings or five shells and one of the shells — one of the bullets had been shot. Q. Okay. So it had — all chambers were filled, is that right? A. Yes, sir. Q. And four of them were live rounds, is that right? A. Yes, sir. Q. And one was a spent round? A. Yes, sir. Q. Okay. What did you do with that gun? A. I took the bullets out of it and showed it to my sergeant and he said, 'put it back. We've got to go. We've got to leave.' And so, I took the bullets and threw the bullets in the back of the van and put the gun — I believe I put the gun back in the seat, rather than back where I got it. Q. Okay. Did you notice anything else unusual about the gun while you inspected it? A. Yes, sir, it had been fired — it appeared to be recently because I got a residue on my hands of gun powder, sticky, greasy residue on my hands."

Defendant contends his Fourth Amendment rights were violated by Officer Bartlett and that, therefore, the trial court erred in failing to suppress the officer's testimony. *Held:*

Relying upon *Bunn v. State*, 153 Ga. App. 270, 272 (265 SE2d 88), defendant argues his Fourth Amendment rights were abridged because the van was found within the curtilage of his house. In *Bunn*, this court observed: " 'Prima facie, a search made within the curtilage of the owner without a warrant is unconstitutional and void. "Curtilage" includes the yards and grounds of a particular address, its gardens, barns, buildings, etc. *Bellamy v. State*, 134 Ga. App. [340].' *Norman v. State*, 134 Ga. App. 767, 768 (216 SE2d 644). In *Bellamy*, supra, a truck parked in the driveway was found to be within the curtilage. In *Norman*, supra, we found a truck within 200 feet of the house to be within the curtilage." The flaw in defendant's argument is that, unlike *Bunn*, no search was made by the police in the case sub judice. On the contrary, defendant's gun simply was observed by the police in plain view. Thus, the legal principles that are applicable to a *search* are inapposite. *State v. Brown*, 158 Ga. App. 312, 315 (279 SE2d 755); *State v. Brooks*, 160 Ga. App. 381 (287 SE2d 95); *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53).

"The essential purpose of the Fourth Amendment is to shield the citizen from unwarranted intrusions by the government upon his privacy. *Cardwell v. Lewis*, 417 U. S. 583, 589 (94 SC 2464, 41 LE2d 325) (1974), citing *Jones v. United States*, 357 U. S. 493, 498 (78 SC 1253, 2 LE2d 1514) (1958). 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' *Katz v. United States*, 389 U. S. 347, 351 (88 SC 507, 19 LE2d 576) (1967). See also *United States v. Dionisio*, 410 U. S. 1, 14-15 (93 SC 764, 35 LE2d 67) (1973). Consequently, a police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights

in the process of establishing his vantage point. See *Ker v. California*, 374 U. S. 23 (83 SC 1623, 10 LE2d 726) (1963); *Harris v. United States*, 390 U. S. 234 (88 SC 992, 19 LE2d 1067) (1968); *Brooks v. State*, 129 Ga. App. 393 (199 SE2d 578) (1974); *Hatcher v. State*, 141 Ga. App. 756 (234 SE2d 388) (1977)." *State v. Aultman*, 160 Ga. App. 550, 551 (287 SE2d 580). This doctrine is applicable equally to homes and automobiles. Thus, in *State v. Key*, 164 Ga. App. 411, 412 (296 SE2d 60), this court ruled: "Under the 'plain view' doctrine, a law enforcement officer has a right to visually search the entirety of a car from his vantage point on a street or roadside. See *State v. Scott*, 159 Ga. App. 869 (285 SE2d 599) (1982). The viewing need not be motivated by any articulable suspicion. On the contrary, law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside). Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence. *State v. Scott*, supra." Did Officer Bartlett have a right to be in defendant's driveway when he looked into the van? We think he did.

In *State v. Nichols*, 160 Ga. App. 386, supra, the State appealed from the grant of the defendant's motion to suppress the admission of a roto-tiller in evidence. In that case, a policeman, accompanied by the owner of the roto-tiller, went to the defendant's mobile home to talk with him. The roto-tiller was located on defendant's property near the trailer. The owner was able to identify the roto-tiller as his own. The State conceded that the roto-tiller was within the curtilage. Nevertheless, this court reversed the grant of the motion to suppress, holding: "From the record it appears that the officer went to the door of the trailer on the same route as would any guest, deliveryman, postal employee, or other caller. The vantage point from which the roto-tiller was visible was about half way between the door of the trailer and the roadside where the officer parked his car. This observation breached no right of privacy of the defendant." Id. at 386.

In the case sub judice, the officer approached the van "on the same route as would any guest, deliveryman, postal employee, or other caller." See *State v. Nichols*, 160 Ga. App. 386, supra. Thus, the entry upon the property was a "valid intrusion" by the police. *State v. Lyons*, 167 Ga. App. 747, 748 (307 SE2d 285). The van was not parked in an area in which defendant had an expectation of privacy. See *Lang v. State*, 165 Ga. App. 576 (302 SE2d 683). And it cannot be said that Officer Bartlett violated defendant's Fourth Amendment rights when he established his vantage point.

" 'A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. *Ker v. California*, 374 U. S. 23 (83 SC 1623, 10 LE2d 726); *Harris v. United States*,

390 U. S. 234 (88 SC 992, 19 LE2d 1067); *Green v. State*, 127 Ga. App. 713, 715 (194 SE2d 678) (1972). And where such a plain-view seizure takes place, there is in effect no search at all. *Grimes v. United States*, 405 F2d 477 (5th Cir. 1968); *Lewis v. State*, 126 Ga. App. 123 (190 SE2d 123).' *Cook v. State*, 134 Ga. App. 712, 715 (215 SE2d 728) (1975)." *State v. Nichols*, 160 Ga. App. 386, 387, supra. This holds true whether or not the officer expected or suspected that he would discover the object seized. *State v. Scott*, 159 Ga. App. 869, 870 (2) (285 SE2d 599). And it holds true whether the object seized is spied with the aid of a flashlight or the naked eye. *Redd v. State*, 240 Ga. 753, 754 (243 SE2d 16); *State v. Lyons*, 167 Ga. App. 747, supra.

The trial court did not err in denying defendant's motion to suppress.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED FEBRUARY 4, 1986 —
REHEARING DENIED FEBRUARY 25, 1986 — 

*James P. Brown, Jr., Albert B. Wallace*, for appellant.

*E. Byron Smith, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.