## A95A2754. THE STATE v. O'BRYANT.
(467 SE2d 342)

POPE, Presiding Judge.

Following a hearing, the trial court granted James D. O'Bryant's motion to suppress, finding the agents lacked authority to look into O'Bryant's vehicle which was parked on private premises. The State appeals. For the reasons that follow, we affirm.

"A trial court's decision of questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428)." *Garcia v. State*, 195 Ga. App. 635, 637 (1) (394 SE2d 542) (1990). With that in mind we consider the evidence.

The evidence presented at the suppression hearing showed the following. Four drug agents of the Marietta-Cobb-Smyrna Narcotics Unit ("MCS") proceeded without a warrant to O'Bryant's home to speak with O'Bryant because they had received an anonymous tip of possible drug dealing. Two MCS agents testified they walked around to the side of the residence because they believed there was a living area in the basement. The State never proved there was a living area in that location and that this activity was not a pretext to further explore O'Bryant's property. Again, there was no response at this door. The agents noticed a black Toyota truck parked in the driveway on the side of the house. Agent Hathaway testified the same truck had been there during an earlier unsuccessful attempt to contact O'Bryant. Agent Cebula testified he had never before seen this truck. Although Agent Cebula testified no vehicles had been present when he visited O'Bryant's home on July 8, 1993, and in the fall of 1993, Agent Hathaway testified that Cebula had looked into the same Toyota truck on their fall 1993 visit and on that occasion discovered "marijuana roaches" in the ashtray.

Agent Cebula claimed he went over to the truck to determine whether the engine was still warm or if the keys were in the ignition. He admitted there was nothing the agents would have done differently if the engine were warm or the keys present, thus conceding he had no valid reason for walking over to the truck. While looking inside the closed and tinted windows, he claimed he was able to discern what appeared to be a plastic bag of marijuana, partially hidden under the driver's seat.

Agent Hathaway then left the residence and procured a search warrant for the house and the truck.[1] The search warrant was based

---

[1] Because the trial court made no ruling on the facial validity of the search warrant, we need not reach that issue. However, in light of the staleness of one of the anonymous tips, the failure to verify any other anonymous tip, the conflicting testimony as to whether the officers had earlier observed the vehicle or noticed marijuana present in the vehicle on another occa-

on their observation of marijuana on the floorboard, anonymous tips of purported drug activity involving O'Bryant, and the officers' observation of marijuana in the truck's ashtray in the fall of 1993. The warrant apparently was founded in part on Cebula's prior discovery of marijuana in the ashtray, a discovery which Cebula seemed to repudiate. Although Hathaway testified Cebula discovered marijuana in the truck on two different occasions, Cebula denied even seeing a vehicle on the premises before April 1994.

During the search of the house, drug agents discovered approximately 20 pounds of marijuana in the master bedroom, anabolic steroids, and a pound of marijuana on the floorboard of the truck. O'Bryant was indicted for possession with intent to distribute marijuana.

"[A] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point. [Cits.]" *Galloway v. State*, 178 Ga. App. 31, 33 (342 SE2d 473) (1986). "[L]aw enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside). Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence. [Cit.]" Id. at 34. However, in this case, the vehicle was not on a street or a roadway and the incriminating evidence was not plainly visible but necessitated peering through a tinted and closed window and the State failed to offer a legitimate reason for looking in the vehicle. The State has failed to show the officers were at a place they were entitled to be. The officers had already knocked on both doors and had no valid reason to look into the truck.

Nor is this a case where the drug agents merely approached O'Bryant's truck on the "same route as would any guest, deliveryman, postal employee, or other caller" and observed contraband. See *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981) (holding no privacy right breached where officer walking toward door of mobile home observes roto-tiller that had been reported as stolen). *Nichols* is distinguishable because the contraband, the stolen roto-tiller, was out in the open and visible from the officer's lawful vantage point on the premises. See also *State v. Zackery*, 193 Ga. App. 319, 320 (387 SE2d 606) (1989) (holding where officer has his access blocked to front door of a residence, knocking on side door is a "valid intrusion"). Here, the

---

sion, the lack of a lawful basis for peering into the truck on April 21, 1994, and the failure to verify that O'Bryant owned the vehicle, there may not have been a sufficient basis for the issuance of the search warrant.

evidence shows the officers had finished their official business and veered from the route any other callers would have taken to look into the truck.

The State contends the trial court improperly granted O'Bryant's motion to suppress because the agent's act of peering through the truck's window was not a search. *Catchings v. State*, 256 Ga. 241, 247 (347 SE2d 572) (1986). The State claims O'Bryant had no legitimate expectation of privacy in those portions of the truck's interior which were visible from the outside of the vehicle by either inquisitive passersby or diligent police officers. Id. at 247.

*Catchings*, however, is factually distinguishable. At the time the police officer peered through the windshield of the automobile in *Catchings*, the vehicle was located in an area of an apartment complex parking lot cordoned off as part of a crime scene. The owner of a vehicle located in a public lot and behind crime scene tape would not have a reasonable expectation of privacy. But in this case, the vehicle was parked in a private driveway at a private residence.

Similarly, the State's reliance on *Galloway*, supra, is misplaced. In *Galloway*, we affirmed the denial of a suppression motion on dissimilar facts. In *Galloway*, police were investigating a reported aggravated assault during which a firearm had allegedly been discharged at the victim by the driver of a white van. Id. at 31. Pursuant to their investigation, police arrived at the home of the alleged perpetrator about 20 minutes after the shooting occurred. Id. at 32. Although the suspect's van was clearly positioned on private property, an officer with the aid of a flashlight looked inside the vehicle and readily observed a handgun. The officer testified he was looking inside the van for the safety of the police, in case the perpetrator was located inside it. Id. at 32.

In the case at bar, the officer was not looking inside the truck for his own safety, it was broad daylight, and the marijuana was not easily visible through the tinted windows. Moreover, the officer who discovered the marijuana testified the agents would not have done anything differently if the keys had been in the ignition or the engine had been warm. Thus, the officer implicitly admitted he had no valid reason for determining whether the engine was warm or the keys were in the ignition. At the point where he elected to peer inside the truck, his actions became investigative in nature. Furthermore, the vehicle was within the curtilage of the home, and O'Bryant had a reasonable expectation of privacy in his driveway. *Espinoza v. State*, 265 Ga. 171, 174 (454 SE2d 765) (1995).

The State argues that the trial court erred by analyzing the facts under the plain view exception because no evidence was seized under that theory. The State claims the officers obtained the warrant before they seized any evidence. However, if the warrant was defective, the

evidence obtained therefrom is excludable. OCGA § 17-5-30. See *Daniels v. State*, 183 Ga. App. 651 (359 SE2d 735) (1987).

The plain view exception to the warrant requirement is based on the discovery of incriminating evidence that is not the product of a search. *Mitchell v. State*, 181 Ga. App. 470 (352 SE2d 647) (1987). In this case, there was a search, the discovery of the contraband was not inadvertent, and the officer did not have a legal right to be looking inside the vehicle. Id.

We find that at the suppression hearing the State did not carry its burden of proving the search and seizure were lawful. *Liskey v. State*, 156 Ga. App. 45 (1) (274 SE2d 89) (1980). For the foregoing reasons, the trial court correctly determined that "[t]he agents had no authority to extend their presence on defendant's private property from knocking on outer doors, to looking inside of the vehicle parked on the premises."

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED JANUARY 18, 1996.

Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Irvan A. Pearlberg, Assistant District Attorneys, for appellant.

Jimmy D. Berry, Mitchell D. Durham, for appellee.