## A03A0163. THE STATE v. SCHWARTZ et al.

(583 SE2d 573)

RUFFIN, Presiding Judge.

The State charged Bradley and Elizabeth Schwartz with possession of marijuana with intent to distribute and possession of more than one ounce of marijuana. Before trial, the Schwartzes moved to suppress all evidence seized from their home, including the marijuana. The trial court granted the motion, and the State appeals. For reasons that follow, we affirm.

In reviewing the trial court's ruling on a motion to suppress, we follow three general principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

So viewed, the evidence shows that on May 22, 2001, Deputies Brown and Tanner of the Paulding County Sheriff's Department prepared to execute an arrest warrant for Charles Walker, who had been charged with aggravated stalking. At approximately 9:20 p.m., the deputies arrived at the residence listed for Walker on the warrant. Tanner walked to the front door of the house, while Brown went to a window seven or eight feet away. The window was covered with blinds, but the slats were open. Brown looked through the blinds and saw a male and a female sitting on a couch. According to Brown, the male appeared to have a marijuana cigarette in his hand. In addition, Brown noticed a large plastic bag containing a green leafy substance that also appeared to be marijuana on a table in front of the female.

After Brown informed Tanner of his observations, Tanner knocked on the door, but did not identify himself. At that point, Brown saw the male walk toward the door, while the female placed the plastic bag in an infant's diaper bag under the table. Brown joined Tanner at the front door, and the two waited for the door to open.

The male opened the door, saw the uniformed officers, stepped

---

[1] (Punctuation omitted.) *Welchel v. State*, 255 Ga. App. 556, 557 (565 SE2d 870) (2002).

outside, and closed the door. He then identified himself as Bradley Schwartz. Brown asked Mr. Schwartz whether Walker was at the residence. Mr. Schwartz responded that Walker, his brother-in-law, was not there. According to Mr. Schwartz, the deputies requested permission to enter the home three times, but he refused and instead provided another address where Walker could be found. At that point, Brown showed Mr. Schwartz the warrant and stated that the deputies needed to enter the house to look for Walker. After some hesitation, Mr. Schwartz led them into the house, where the deputies saw Elizabeth Schwartz on the couch. Mrs. Schwartz confirmed that Walker was her brother and that he was not at the home.

The deputies asked permission to search the house for Walker, and the Schwartzes consented. Tanner looked through the home with Mrs. Schwartz, but did not find Walker. At that point, Brown told the Schwartzes: " 'we've got another issue that we need to discuss.' " When Brown advised them of what he had seen through the window, Mr. Schwartz placed his face in his hands and Mrs. Schwartz began to cry. Mr. Schwartz then reached into the diaper bag, pulled out the bag of suspected marijuana, and stated, "it's a quarter pound."

Brown asked whether any other marijuana could be found in the house. Mr. Schwartz responded, "yes," and gave Brown a marijuana cigarette, rolling papers, and another small bag of marijuana. The Schwartzes subsequently consented to a further search of the house, which produced no additional contraband.

The Schwartzes filed a motion to suppress, arguing that the police illegally searched their home and seized the marijuana without a warrant. The trial court agreed and suppressed "all evidence obtained from the premises."

1. In a detailed order, the trial court first concluded that, although lawfully on the Schwartz property to execute the arrest warrant, Brown had no right to look through the Schwartzes' window. We find no error.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." The record shows that the Schwartz home is set back 100 feet from the street and surrounded by a fence. This is not a situation where the contraband was visible from a place outside of the Schwartz property, such as the street or public sidewalk.[2] Indeed, the State does not contend that Mr. and Mrs. Schwartz or the marijuana could be seen through the window from anywhere other than their property.

[2] Cf. *Jackson v. State*, 258 Ga. App. 806, 808 (2) (a) (575 SE2d 713) (2002) (no Fourth Amendment violation where officer able to see evidence of crime "from a vantage point on the public sidewalk").

Under these circumstances, Brown invaded their privacy by standing at the window and peering inside the house.[3] The question is whether the violation was reasonable.

Undoubtedly, an officer may knock on the outside door of a home without implicating the Fourth Amendment.[4] The State argues that, given the arrest warrant, the deputies were further authorized to enter the Schwartz residence and search for Walker. In granting the motion to suppress, however, the trial court found insufficient evidence that Walker lived with the Schwartzes. And "[i]t is now well established that even when armed with an arrest warrant, police must have either a search warrant, exigent circumstances or consent to lawfully enter a third person's home to arrest someone who does not reside there."[5]

Moreover, even if the deputies were authorized to enter the home to arrest Walker, Brown's decision to peer through a window was not necessarily reasonable. Nothing in the record indicates that Brown gained this vantage point by traveling along the route any visitor would travel to the Schwartzes' front door.[6] Instead of walking to that door, Brown "went to the side of the house where the carport and the front of the house meet." Brown's authority to approach the house, therefore, did not justify his observation through the window.[7]

On appeal, the State claims that safety concerns supported the visual intrusion. Brown, however, never clearly described his conduct as a safety precaution. Furthermore, officers may only search a house for safety reasons "in conjunction with an in-home arrest when they possess 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individ-

---

[3] See *State v. O'Bryant*, 219 Ga. App. 862, 864-865 (467 SE2d 342) (1996) (because homeowner had privacy interest in vehicle parked in his driveway, officer's actions in looking through windows of vehicle constituted a search); cf. *Gates v. State*, 229 Ga. App. 766, 767 (a) (495 SE2d 113) (1997) (" '[A] criminal defendant has no privacy right in contraband or instrumentalities of a crime which are in "open view" and exposed to the public or which a police officer views from a place he is legally entitled to be.' "); *United States v. Whaley*, 779 F2d 585, 591 (11th Cir. 1986) (defendant who failed to cover his windows had no reasonable expectation of privacy in activities in basement that could be seen through window from neighboring property).

[4] See *Gilreath v. State*, 247 Ga. 814, 820 (1) (279 SE2d 650) (1981); *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981) (police may walk to the door of a residence "on the same route as would any guest, deliveryman, postal employee, or other caller").

[5] *Brown v. State*, 240 Ga. App. 321, 322 (1) (523 SE2d 333) (1999).

[6] Compare *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986) (officer did not violate Fourth Amendment by looking in window of van parked in driveway along route any visitor would follow to front door); *Nichols*, supra (officer saw contraband in plain view while walking along normal route to front door of residence).

[7] See *O'Bryant*, supra at 863-864 (officers not authorized to "veer[ ] from the route any other callers would have taken to look into the [defendant's] truck," which was parked on the defendant's property); cf. *Galloway*, supra; *Nichols*, supra.

ual posing a danger to those on the arrest scene.' "[8] Officers armed with a search warrant also may not enter a home without knocking absent some exigent circumstance, such as a reasonable belief that forewarning would jeopardize their safety.[9] We hold that a similar reasonable belief must support an officer's decision, based on safety grounds, to peer through a window before executing an arrest warrant.

In this case, the trial court found no evidence that Walker posed any threat of death or injury to the officers. The testimony at the suppression hearing supports that conclusion. Brown admitted that the charge against Walker did not involve the use of weapons or physical violence. On the contrary, the warrant stated that Walker committed the stalking offense when he violated a temporary protective order by telephoning and attempting to contact Delores Walker.[10] Brown further testified that he typically reads a warrant before serving it and understood that Walker's offense resulted from the violation of a court order.

Given this evidence, the trial court was authorized to find that safety concerns did not justify the intrusion and, therefore, that Brown's decision to peer through the window was unreasonable.[11] Accordingly, the trial court did not err in suppressing all evidence gathered as a result of Brown's illegal observation.[12]

2. The trial court further concluded that, assuming Brown was entitled to look through the window, no exigent circumstances authorized the warrantless seizures. Again, we find no error.

As an initial matter, Brown's observations did not permit him to seize the marijuana. Even when an officer outside a home legally observes contraband in the house, "it does not follow that the 'in-home' seizure of the observed objects . . . is lawful, for the plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's *access* to the object itself has some prior Fourth Amendment justification."[13] Such access is supported

---

[8] *Inglett v. State,* 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999).

[9] See *State v. Smith,* 219 Ga. App. 905, 906 (467 SE2d 221) (1996); see also *Bayshore v. State,* 258 Ga. App. 65, 67 (573 SE2d 97) (2002) (officer may only frisk an individual during an investigative stop if the officer reasonably believes the individual may be armed).

[10] It appears that Charles and Delores Walker were married, but were having domestic problems.

[11] See *King v. State,* 217 Ga. App. 889, 891 (459 SE2d 605) (1995) (although officer asserted that he needed to enter home without warrant to ensure his safety, the evidence did not support his claim and the entry was unauthorized); cf. *Minnesota v. Clarke,* 1996 Minn. App. LEXIS 72, at *3-4 (January 23, 1996) (police acted reasonably in looking through window before executing an arrest warrant on potentially dangerous fugitive who was charged with second-degree assault and was on the FBI's top ten wanted list).

[12] See *O'Bryant,* supra at 864-865.

[13] (Emphasis in original.) *State v. David,* 269 Ga. 533, 535 (2) (501 SE2d 494) (1998).

only "by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances."[14] As we have previously noted,

> [i]ncontrovertible testimony of the senses that an incriminating object is on [the] premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.[15]

The deputies in this case did not have a warrant to seize the marijuana from the Schwartzes' home. And when they entered the house, the contraband was no longer in plain sight.[16] Furthermore, by the time Brown confronted Mr. and Mrs. Schwartz about the marijuana, the deputies had determined that Charles Walker was not in the home. Even assuming the officers lawfully entered the house to arrest Walker, the seizure clearly exceeded their scope of authority under the arrest warrant.[17]

On appeal, the State argues that exigent circumstances presented by the Schwartzes' "active concealment of suspected marijuana" authorized an immediate, warrantless seizure.[18] "An exigent circumstance which . . . justif[ies] the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation."[19] The issue of "whether exigent circumstances precluded obtaining a warrant is one of fact to be determined by the trial court."[20]

In this case, the State points to no evidence that the deputies believed an emergency situation actually existed. The State argues that Brown "was reasonable in expecting [the marijuana] would be destroyed" if he left to obtain a search warrant. But it cites no evidence that Brown had such an expectation or acted based on any perceived "emergency."

Citing *State v. David*,[21] the State further argues that exigent cir-

---

[14] See id.

[15] (Punctuation omitted.) *Welchel*, supra at 558.

[16] See *State v. Scott*, 176 Ga. App. 887, 889 (2) (339 SE2d 276) (1985) (police may seize contraband in plain sight when properly executing an arrest warrant).

[17] See *Grant v. State*, 220 Ga. App. 604, 607-608 (1) (469 SE2d 826) (1996) (trial court erred in failing to grant motion to suppress where search exceeded the scope of the warrant); *State v. Escobar*, 193 Ga. App. 535, 537-538 (388 SE2d 534) (1989) (physical precedent only) (officer's actions that exceeded scope of authorized search constituted a new invasion of privacy requiring justification); *Scott*, supra at 889-890 (3) (officers exceeded scope of authorized search).

[18] The State does not claim that the Schwartzes consented to the seizure.

[19] (Punctuation omitted.) *Welchel*, supra at 559.

[20] *Bogan v. State*, 165 Ga. App. 851, 852 (2) (303 SE2d 48) (1983).

[21] Supra.

cumstances arise *any* time an officer sees a suspect conceal contraband. We disagree. In *David*, an officer observed a marijuana pipe on a table in an apartment through an open doorway and then saw an occupant try to hide it. Finding exigent circumstances, our Supreme Court noted "the likelihood that the contraband was in danger of immediate destruction, as it was undisputed that the officer saw one of the apartment's occupants attempt to conceal [it] *upon seeing the officer at the open door*."[22] In other words, the act of concealment was in response to police presence.

There is no evidence that the Schwartzes knew the police were outside their home when they hid the marijuana. Tanner did not identify himself when he knocked on their door. Similarly, nothing in the record indicates that the Schwartzes were aware that Brown had seen the marijuana from the window. In fact, the Schwartzes' emotional reaction when Brown told them about his observations supports the opposite conclusion.

Mr. and Mrs. Schwartz did not realize that officers were present at their home or had seen the marijuana before they hid it. And we cannot conclude, as a matter of law, that the marijuana was in danger of destruction simply because the Schwartzes concealed it from an unknown visitor. Under these circumstances, the trial court did not err in refusing to find exigent circumstances authorizing immediate seizure of the marijuana.[23]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 18, 2003.

---

[22] (Emphasis supplied.) Id. at 536 (2).

[23] See *Carranza v. State*, 266 Ga. 263, 266-268 (1), n. 2 (467 SE2d 315) (1996) (even where crime committed in presence of police officers, exigent circumstances or consent must justify warrantless intrusion into home; court noted that the record lacked evidence that defendant "suspected law enforcement involvement in the ['buy-bust'] sale or was aware that officers were in the area watching him or his home"); *Gates*, supra at 768 (no evidence of exigent circumstances); cf. *David*, supra; *Cates v. State*, 232 Ga. App. 262, 263-264 (501 SE2d 262) (1998) (warrantless intrusion and seizure authorized where, among other things, officers reasonably believed that they had been seen by someone in home and concluded that informant and children within home might be in danger and that contraband might be destroyed); *Merriman v. State*, 201 Ga. App. 817, 821 (412 SE2d 598) (1991) (physical precedent only) (exigent circumstances supported immediate intrusion into home when agents observed a marijuana field in the backyard, realized that someone from the home had seen them looking at the field, and grew concerned that evidence in the house might be destroyed).

*James R. Osborne, District Attorney, Thomas J. Melanson, Assistant District Attorney*, for appellant.

*McKenney & Froelich, William J. McKenney*, for appellees.