## A04A1549. BOGAN v. THE STATE.
(605 SE2d 872)

ADAMS, Judge.

Clarence Bogan IV appeals following his conviction for trafficking in cocaine. We affirm.

On February 6, 2002, officers from the Middle Georgia Fugitive Squad were attempting to locate a fugitive, relying upon a tip from the fugitive's girlfriend. The girlfriend had directed police to a specific street and given information that one of the fugitive's relatives lived "close to the end" of that street. She also indicated that there would be a dark-colored Honda Accord and a second car parked in the driveway. While in the area, the officers observed a blue Honda Accord, matching the girlfriend's description, backing out of a driveway. Deputy Sidney Jordan pulled behind the car, blocking it from exiting the driveway, and the driver jumped out and ran. Two other men also exited the car. Jordan chased the driver, but was unable to catch him. In the meantime, Investigator Maurice Dudley, Jordan's partner, spoke with the two passengers, later identified as Bogan and his co-defendant Travis McKenzie, in an effort to determine the driver's name. Bogan told Dudley that the driver's name was "Jason," but would provide no other information. McKenzie then asked to go into the house to use the restroom.

When Jordan returned to the scene, he looked inside the car as he passed it and saw in plain view a plastic baggie in the driver's seat that appeared to contain crack cocaine. He could see the baggie without entering the car, opening the door or rolling down any windows. After conferring, the two officers called for a Warner Robins Police Department drug investigator, because they were inside the Warner Robins city limits. Bogan was arrested at that time. The officers later found McKenzie hiding in a bedroom closet inside the house, and he was arrested.

The substance in the baggie tested positive for cocaine, with a total weight of 106.62 grams and a purity of 49.3 percent. An officer from the Warner Robins Police Department narcotics intelligence unit testified that the street value of the drug, when measured by the gram, would be approximately $10,000. If the drug were "cut" with another substance and compressed into rocks of crack cocaine, the value would be approximately $20,000. He also said that the amount of cocaine found in this case was unusual for the area.

Alvin McKenzie, Travis McKenzie's brother, was later identified as the driver of the car that night, and he testified at the trial. He said that he ran from the scene after the police pulled behind the car because he had an outstanding probation warrant. During his testimony, he denied any knowledge of the drugs in the car. But Alvin McKenzie acknowledged that after he was identified, he initially told police that the drugs were his. He said he did so because Bogan had offered him between $10,000 and $20,000 to "claim the drugs." He said that he received $3,000 and then signed a written statement saying that the drugs belonged to him. He expected to receive more money at a later time. Alvin McKenzie subsequently testified that the drugs were his at a pre-trial hearing in this case and then was arrested on charges relating to the cocaine. After his arrest, however, he recanted his written statement, and told his lawyer and the district attorney that he had been paid to write it. During his subsequent incarceration Alvin McKenzie was placed in a jail cell with Bogan, who convinced him to sign a second statement claiming the drugs and denying that he had been given money to make the earlier statement. At trial, Alvin McKenzie recanted this second statement, saying, "I ain't fixing to go to jail for nobody else's stuff. I ain't going to do time for them."

Alvin McKenzie's mother testified that her son came into possession of a large "bundle" of cash, and confirmed Alvin's testimony that he had spent the money on a number of items, including amounts owed on his probation. She also confirmed that Alvin told her that Bogan had paid him the money in exchange for taking a charge for him.

The state introduced similar transaction evidence regarding Bogan's prior conviction for possession with intent to distribute cocaine. In that incident, following a traffic stop, police seized from Bogan approximately twenty pieces of crack cocaine, $250 in cash, two additional "fairly good-sized wedges" of crack cocaine and six small bags of marijuana. The location of that traffic stop was approximately one mile or less from the location at issue in this case.

1. Bogan first asserts that the trial court erred in denying his motion to suppress the cocaine seized from the car. He asserts that the officers did not have a legal right to look into the car because it had not exited the curtilage of his home, but was rather blocked by the police car, citing *State v. O'Bryant*, 219 Ga. App. 862 (467 SE2d 342) (1996).

In *O'Bryant*, police went to the defendant's home without a warrant on an anonymous tip of possible drug dealing. No one responded when the officers knocked on the doors of the house. The agents then noticed a black truck parked in the driveway. One officer walked over and peered into the truck's tinted windows where he saw a bag of marijuana, partially hidden under the driver's seat. Id. at

862-863. This Court upheld the grant of defendant's motion to suppress this evidence, finding that the marijuana was not in "plain view" because the police had finished their official business on the defendant's property and had no valid reason to look into the truck or even to be where they could see into the truck. Id. at 864-865.

The facts of this case are distinguishable. Here, the officers were seeking a fugitive and had been given information by the fugitive's girlfriend that he would be at a relative's house on the street where Bogan lived. The girlfriend had also given the officers a particular make, model and general color of the car. Police spotted a car matching the girlfriend's description pulling out of a driveway and stopped it. The driver then jumped out of the car and ran away. The officer who gave chase returned to the scene while his partner was attempting to identify the driver. As he passed the car to approach the other men, he spotted the baggie with suspected cocaine.

We find that the officers were authorized under the totality of circumstances to make the initial investigative stop of the car to determine if it contained the fugitive they sought. See *Howard v. State*, 265 Ga. App. 835, 836-837 (595 SE2d 660) (2004); *Williams v. State*, 249 Ga. App. 119, 121 (1) (a) (547 SE2d 395) (2001). And unlike the situation in *O'Bryant*, the evidence in this case was observed while the officers were still in the process of that investigation. "The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's *access* to the object itself has some prior Fourth Amendment justification. A police officer may only seize what is in plain sight, if he is in a place where he is constitutionally entitled to be." (Punctuation and footnotes omitted; emphasis in original.) *Leon-Velazquez v. State*, 269 Ga. App. 760 (1) (605 SE2d 400) (2004). Because the officers in this case were constitutionally entitled to walk past the car in the course of their investigation and could observe the cocaine from that vantage, the trial court properly denied Bogan's motion to suppress. See *Williams v. State*, 249 Ga. App. at 121 (1) (b).

2. Bogan next asserts that the trial court erred in allowing Officer Derek Lumsden to testify because the state failed to include his name on its witness list prior to trial.

"The witness list rule is designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview." *Mize v. State*, 269 Ga. 646, 653 (7) (501 SE2d 219) (1998). And the trial court may allow an exception to the rule "where the trial judge in his discretion determine[s] that the defendant can be protected by some other form of relief." (Punctuation and footnote omitted.) *Boone v. State*, 250 Ga. App. 133, 139 (9) (549 SE2d 713) (2001). See also *Rose v. State*, 275 Ga. 214, 217 (3) (563 SE2d 865) (2002).

Lumsden was called to testify regarding Bogan's prior conviction for possession of cocaine. Several weeks before the trial, the state served notice of its intent to present similar transaction evidence regarding this incident, and the trial court ruled that the evidence was admissible following a hearing on the matter. While the state admitted at trial that Lumsden's name had been inadvertently omitted from its witness list, the prosecutor noted that Lumsden had been identified at the earlier hearing as the officer involved in the prior incident. In addition, the state provided Bogan a written report of the incident which referenced Lumsden as the officer involved. The trial court allowed the testimony over Bogan's objection.

We find no abuse of discretion. Bogan had several weeks' notice that the state intended to present evidence of the prior incident and that Lumsden was the officer who handled that case. Thus, the purpose of the rule was not thwarted, and Bogan was not prejudiced. *Boone v. State*, 250 Ga. App. at 138 (9). Cf. *Woodward v. State*, 262 Ga. App. 363, 366 (2) (585 SE2d 687) (2003).

3. Bogan further asserts that the trial court erred in charging the jury that he had committed prior "offenses," when the state presented evidence of just one prior similar transaction.

This purported misstatement occurred when the trial judge gave the following charge on similar transaction evidence:

> The defendant in this case — Defendant Bogan is the one we're talking about — is on trial for the particular offense charged in this bill of indictment only. He's not on trial for those other offenses or transactions that have been introduced. The Court does not express an opinion as to whether the defendant has committed any other offense. That again is solely for you to determine.

We find no basis for reversal on this ground. Although this portion of the charge was not precisely accurate, we find that the charge, when considered as a whole, was not likely to confuse the jury. *Sutton v. State*, 263 Ga. App. 188, 192 (3) (587 SE2d 379) (2003). "[A] mere verbal inaccuracy in a charge, which results from a palpable slip of the tongue, and clearly could not have misled or confused the jury, is not reversible error." (Punctuation and footnote omitted.) Id.

4. Bogan also argues that the evidence was insufficient to support his conviction. Based upon our review of the record, we find the evidence sufficient for a rational trier of fact to find Bogan guilty beyond a reasonable doubt of the offense charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 21, 2004.

*Nixon & Nixon, Jon A. Nixon,* for appellant.
*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney,* for appellee.