**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 1, 2016**

# In the Court of Appeals of Georgia

A16A0792. THE STATE v. VICKERS et al.

BOGGS, Judge.

Treland Jones, Ladairius Vickers, and Deonte Sims were charged by accusation with two counts of violation of the Georgia Controlled Substances Act.[1] The State appeals from the trial court's grant of the appellees' motions to suppress evidence obtained in a warrantless search of a vehicle parked in the driveway of Sims' home. Because the evidence supports the trial court's conclusion that officers failed to obtain a warrant and showed no consent or exigent circumstances to support a search or arrest in the curtilage of the residence, we affirm.

---

[1]A fourth defendant, Takhiyra Turner, pled guilty and is not a party to this appeal.

"A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment. [Cits.]" *Kirsche v. State*, 271 Ga. App. 729 (611 SE2d 64) (2005). And "[w]hether evidence is found within the curtilage of a residence is a mixed question of fact and law. On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts." (Citations, punctuation, and footnote omitted.) *Rivers v. State*, 287 Ga. App. 632, 633 (1) (b) (653 SE2d 78) (2007).

So viewed, the evidence shows that Gwinnett County police officers were executing an unrelated arrest warrant when they noticed a car parked in the driveway of the house next door. The car was wholly inside the boundaries of the private property, "fairly closely parked to the actual garage of the home" as shown in a photograph identified by a police witness.[2] A plainclothes officer testified that as he

---

[2]While the State asserts that "the car pulled up," this was not supported by the evidence. On direct examination, an officer testified that he was "not 100 percent sure, but I want to recall" that the vehicle arrived during the police surveillance. On cross-examination, however, he acknowledged that was "a guess" and he did not see it pull up as he was not present; he suggested that the other officer might know. That

walked through the side yard of the neighboring house, about 10 or 15 feet from the car, he smelled a strong odor of marijuana and observed heavy smoke inside the vehicle. He also testified that he saw individuals in the car passing "something" back and forth, but that he did not know what it was. Asked, "You never saw them passing a marijuana cigarette or joint?" he responded, "No," and that "as far as what they were passing, I don't know." He testified that he "*assumed* that it was marijuana," (emphasis supplied), and the trial court so found. And the trial court also found that, other than the odor of marijuana, even after approaching the vehicle "the officers still could not see any contraband in plain view to seize within the car."

The plainclothes officer informed other officers via radio of the occupants of the car and that he "believe[d] they were smoking marijuana. They needed to come and make contact with them." A police sergeant testified that he observed the car for over an hour. As he walked up the driveway, he could smell the odor of marijuana, but did not see anyone in the vehicle smoking and did not see any marijuana in plain view. He further testified that he did not observe any traffic offense and did not

officer, however, testified that he first noticed the car when it was parked in the driveway of the adjoining house, and that he did not see it arrive. The trial court found "insufficient evidence that the vehicle was even operational," and we must construe the evidence to uphold that finding.

"witness[] any criminal activity out of the car or the occupants of the car prior to approaching the driveway." He could not even see how many people were inside until he was "actually right at the vehicle" and "could actually touch it."

The sergeant determined that four individuals were in the car and "decided to just detain the individuals in the car until I could get my officers back. Because at that point we were outnumbered, and it became a safety issue for me." He testified, "I didn't do an investigation. I decided to detain and hold what I've got." Police removed the four occupants of the vehicle but saw no illegal substances or other evidence "in plain view." No search warrant was ever obtained, as the officers testified that they relied upon the "automobile exception." Once the occupants were removed, officers searched the vehicle and found 1.4 grams of suspected marijuana and alprazolam under the front passenger seat. No evidence of burnt marijuana was found. The State did not elicit and the officers did not testify to any exigent circumstances or consent to search, and the trial court found that neither existed.

> [E]ven if the officers had probable cause to investigate a crime, the Fourth Amendment prohibited them from entering [the] home or its curtilage without a warrant absent consent or a showing of exigent circumstances. *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996); *Bunn v. State*, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). See also *State v. Gallup*, 236 Ga. App. 321, 323 (1) (b) (512

4

SE2d 66) (1999) (constitutional protection extends to curtilage of home).

(Footnote omitted.) *Kirsche*, supra, 271 Ga. App. at 731; see also *Bowman v. State*, 332 Ga. App. 407, 408 (1) (773 SE2d 33) (2015) ("yard immediately surrounding a dwelling falls within the curtilage of a home. [Cit.]")

Moreover, we have held specifically that a defendant has a reasonable expectation of privacy in a vehicle parked within the curtilage of his home. *State v. O'Bryant*, 219 Ga. App. 862, 864 (467 SE2d 342) (1996). There, drug agents went without a warrant to O'Bryant's residence for a "knock and talk" based on "an anonymous tip of possible drug dealing." Id. at 862. After they knocked on two doors without result, one agent walked over to a truck parked in the driveway beside the house. "While looking inside the closed and tinted windows, he claimed he was able to discern what appeared to be a plastic bag of marijuana, partially hidden under the driver's seat." Id. We held that the officers "had finished their official business" and "had no valid reason to look into the truck." Id. at 863-864. "At the point where [the agent] elected to peer inside the truck, his actions became investigative in nature. Furthermore, the vehicle was within the curtilage of the home, and O'Bryant had a reasonable expectation of privacy in his driveway. [Cit.]" Id. at 864.

In this case, as in *O'Bryant*, "the vehicle was not on a street or a roadway and the incriminating evidence was not plainly visible," id. but required a search of the interior of the vehicle to discover. Id. at 863. No evidence was presented that the officers intended to engage in a "knock and talk" at the residence or its curtilage. They simply approached the car, opened the doors, and removed the occupants. See *Gallup*, supra, 236 Ga. App. at 324 (1) (c) (opening door of refrigerator exceeded scope of officer's investigation of burglary). When the officers here searched the interior of the vehicle without a warrant, consent, or exigent circumstances, their discovery of the drugs under the seat was illegal and was correctly suppressed. Id.; see also *Bowman*, supra, 332 Ga. App. at 408-409 (1).

Both in the trial court and on appeal, the State relies upon the "'automobile exception' to the warrant requirement imposed by the Fourth Amendment" to contend that the search was permissible, contending that it applies to searches "on private property" on the authority of *State v. Sarden*, 305 Ga. App. 587, 589 (699 SE2d 880) (2010). But the State, while citing our decision in *Sarden*, ignores the distinction made there between the curtilage of a private residence and private commercial property. The police arrested Sarden on four outstanding felony warrants after he parked in a convenience store parking lot, and they looked through the window of his

6

car and saw drugs in plain view. Id. at 588. Sarden argued that the automobile

exception did not apply because he was parked on private property, but we rejected

that contention, relying on numerous Georgia decisions:

> The automobile exception is justified on two grounds: the ready
> mobility of automobiles and the diminished expectation of privacy that
> citizens have in them. See *California v. Carney*, 471 U. S. 386, 391-392
> (II) (105 SCt 2066, 85 LE2d 406) (1985). And "[w]hen a vehicle is
> being used on the highways, or if it is readily capable of such use and is
> found stationary in a place not regularly used for residential purposes --
> temporary or otherwise -- the two justifications for the vehicle exception
> come into play." (Footnote omitted.) Id. at 392-393 (II). Hence, the
> automobile exception applies even if the car is not stopped along a
> highway, but is stationary in a place *not regularly used for residential
> purposes*, as in the present case, where Sarden's car was in a parking
> space outside a commercial establishment.

(Citations and footnote omitted; emphasis supplied.) Id. at 590. Other United States

Supreme Court decisions and the Eleventh Circuit decision cited by the State likewise

do not involve the search of a vehicle within the curtilage of a defendant's residence.[3]

---

[3]*Carney*, supra, (vehicle parked on a downtown parking lot open to the public
and not regularly used for residential purposes); *Pennsylvania v. Labron*, 518 U. S.
938 (116 SCt 2485, 135 LE2d 1031) (1996) (on public street and on another's
property with owner's consent); *United States v. Lindsey*, 482 F3d 1285 (11th Cir.
2007) (vehicle parked in gas station).

And to the extent the State attempts to rely upon *Harris v. State*, 948 So. 2d 583 (Ala. Crim. App. 2006), holding that the automobile exception continues to apply within the curtilage, "we are not bound by decisions of other states or federal courts except the United States Supreme Court." *Gresham v. Harris*, 329 Ga. App. 465, 467 (765 SE2d 400) (2014). We decline to alter the established Georgia rule that vehicles, like any other item or location within the curtilage of a residence, are not to be searched without a warrant, consent, or exigent circumstances. See *O'Bryant*, supra. Here, the trial court explicitly found that "there was insufficient evidence that the vehicle was even operational to support a finding of exigency." Given that finding of fact, to which we must show deference, the rationale for the automobile exception as delineated in *Sarden*, supra, does not exist here.

Our Supreme Court has recently reiterated, in a unanimous opinion, that we are bound to three standards in reviewing a trial court's ruling on a motion to suppress:

> First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations, punctuation, and footnotes omitted.) *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). We cannot reweigh the evidence, particularly in order to rely upon facts expressly discounted by the trial court.

The special concurrence recognizes that the argument that the search was permissible as incident to the arrest of the appellees under *Arizona v. Gant*, 556 U. S. 332, 336 (I) (129 SCt 1710, 173 LE2d 485) (2009), was never raised below and is therefore waived, but nevertheless addresses the merits of this analysis. Our ability to consider this issue is precluded because we cannot engage in meaningful analysis precisely because it was not raised below. No evidence was presented as to whether the appellees were in fact arrested, or simply detained for officer safety pursuant to what officers contended was a search under the "automobile exception." See *Brannon v. State*, 231 Ga. App. 847, 850 (500 SE2d 598) (1998) (distinguishing between "traffic *Terry* stop" for officer safety and "a search conducted incident to arrest.") Nor was evidence developed regarding the indicia of arrest or whether the appellants were within "reaching distance" of the vehicle within the meaning of *Gant*, supra.

Moreover, even if we were to consider this argument, and even accepting the contention that probable cause existed to arrest appellees, the officers still were not authorized to enter the curtilage to make the arrests. On the contrary, "to justify a

nonconsensual, warrantless intrusion into a person's home, there must exist probable cause *for the arrest or search* inside the home *and* a showing of exigent circumstances. [Cit.]" (Citations and punctuation omitted; emphasis supplied.) *Watson v. State*, 302 Ga. App. 619, 622 (1) (691 SE2d 378) (2010) (police violated Fourth Amendment by opening trailer door without exigent circumstances). See also *Corey v. State*, 320 Ga. App. 350, 355 (1) (b) (739 SE2d 790) (2013) (even if officer had probable cause to arrest, no exigent circumstances authorized entry into curtilage to effect arrest.) And "the presence of contraband without more does not give rise to exigent circumstances, sufficient to authorize a warrantless entry into a home." (Citations, punctuation and footnote omitted.) *State v. Gray*, 285 Ga. App. 124, 128 (2) (645 SE2d 598) (2007). Here, the officers had no more right to enter the curtilage of the home to make an arrest than they did to enter it to institute a search. Indeed, they acknowledged as much by relying upon the "automobile exception" to justify their search.

In addition, the cases cited by the special concurrence are inapposite here. In *Gant*, supra, the arrest itself was authorized because of an outstanding warrant for Gant's arrest, and because police observed him driving without a license as he entered his driveway. 556 U. S. at 336-337 (I). And in *Kirkland v. State*, 316 Ga. App. 310

10

(728 SE2d 907) (2012), we held that an officer initiated a permissible first-tier encounter, and Kirkland consented to a pat-down and to the removal of a bag containing contraband from his pocket. Id. at 312-313. Moreover, while we noted in passing that Kirkland's car was "backed into a private residence" when the officer approached him, id. at 310, no facts were noted regarding the type of residence, the extent of the curtilage, or the position of the car with reference to "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." (Citations and punctuation omitted.) *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (Citations and punctuation omitted.) *State v. Outen*, 289 Ga. 579, 582 (714 SE2d 581) (2011).

The trial court's conclusion that the officers failed to obtain a warrant and entered the curtilage without consent or exigent circumstances is supported by the evidence, and we therefore affirm.

11

*Judgment affirmed. Barnes, P. J., concurs. Rickman, J., concurs specially and in the judgment only.*

A16A0792. THE STATE v. VICKERS et al.

RICKMAN, Judge, concurring specially and in judgment only.

I disagree with the majority opinion to the extent that it can be read to create a bright-line rule that the automobile exception may never justify the warrantless search of a vehicle located on a private residence–even within its curtilage–or implies that such a rule is already established under Georgia law. Nevertheless, I am constrained to affirm the ruling of the trial court under our standard of review and the arguments preserved before that court.

I write separately because I think it important to recognize that at no time did the officers in this case act unreasonably in the context of the situation presented to them, nor did their warrantless search of the vehicle at issue constitute a violation of the Fourth Amendment; rather, the search was authorized incident to appellees' arrest. Because this argument was not preserved on the record before us, however, we are

precluded from considering it.[1] See *McCormack v. State*, 325 Ga. App. 183, 188 (1) (b) (751 SE2d 904) (2013).

The officers here personally observed, from a place they were lawfully entitled to be, appellees "hotboxing" in a vehicle, smelled the strong–at one point "overwhelming"–odor of marijuana, viewed smoke inside of the vehicle so thick it was difficult to see from one side of the car to the other, and witnessed appellees passing what, in their training and experience, they believed to be marijuana. They thus had probable cause to arrest appellees. See *Hughes v. State*, 296 Ga. 744, 748 (2) (770 SE2d 636) (2015) (probable cause to arrest requires "[f]acts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense") (citation and punctuation omitted). Because they were authorized to arrest appellees, they were also authorized to conduct a search of the vehicle incident to that

---

[1] The State did not argue search incident to arrest during the hearing on the motion to suppress. Following that hearing, the trial court ordered the parties to submit additional briefing in order to discuss under what authority the officers were permitted to conduct a warrantless search of the vehicle. The additional briefs, however, were either never submitted or not filed in the trial court and are not part of the appellate record.

2

lawful arrest, regardless of the vehicle's location.[2] See *Arizona v. Gant*, 556 U. S.

332, 351 (VI) (129 SCt 1710, 173 LE2d 485) (2009) ("Police may search a vehicle

incident to a recent occupant's arrest . . . if . . . it is reasonable to believe the vehicle

contains evidence of the offense of arrest." ); *Kirkland v. State*, 316 Ga. App. 310,

313 (728 SE2d 907) (2012).

---

[2] It is irrelevant to our consideration whether the officers believed themselves to be operating pursuant to the "vehicle exception" to the warrant requirement, since the objective nature of Fourth Amendment inquiries into the reasonableness of police conduct has been repeatedly emphasized by the United States Supreme Court. See, e.g., *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SCt 1769, 135 LEd2d 89) (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (citation and punctuation omitted); *Maryland v. Macon*, 472 U. S. 463, 470-471 (II) (A) (105 SCt 2778, 86 LEd2d 370) (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") (citation, punctuation and emphasis omitted); *Scott v. United States*, 436 U.S. 128, 136 (II) (98 SCt 1717, 56 LEd2d 168) (1978) ("Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional.").